IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

TEKLU DAWIT,                                )
                                            )
      Plaintiff,                        )     NO. 3:20-cv-00624
                                            )
v.                                          )     JUDGE RICHARDSON
                                            )
MEHARRY MEDICAL COLLEGE,                    )
                                            )
      Defendant.                        )

## **MEMORANDUM OPINION**

Pending before the court is Defendant's Motion for Summary Judgment (Doc. No. 33, "Motion" or "Defendant's Motion"), filed along with a supporting memorandum of law. (Doc. No. 34). Plaintiff filed a response (Doc. No. 39, "Response") and Defendant filed a reply (Doc. No. 46). For the reasons stated herein, Defendant's Motion will be **GRANTED** in part and **DENIED** in part.

# FACTS[1]

## I.    Plaintiff's First Year of Medical School

Plaintiff, Teklu Dawit, entered medical school at Meharry Medical College ("Meharry")[2] in the fall of 2015. (Doc. No. 40 at 1).[3] Plaintiff struggled academically in his first-year courses and was subsequently decelerated from a four-year graduation track to a five-year graduation track after his first semester. (Doc. No. 40 at 2).

Since high school, Plaintiff has suffered from Obsessive Compulsive Disorder (OCD), Irritable Bowel Syndrome (IBS), and General Anxiety Disorder (GAD). (Doc. No. 40 at 1). He received formal diagnoses for these disabilities in 2018.[4] (Doc. No. 36-1 at 18-19).[5] For purposes of the instant Motion, it is undisputed that Plaintiff in fact has suffered from OCD, GAD, and IBS

---

[1] Facts that are stated herein without qualification are undisputed and treated as such. As to cited undisputed facts, the lack of dispute is usually indicated in Doc. Nos. 40 and 45, Plaintiff's and Defendant's respective response to the other party's asserted undisputed material facts. Alleged facts that are qualified here in some way (as for example by being prefaced with "Plaintiff contends that") are in dispute and are treated as such.

    As for facts that are undisputed (and thus stated herein without qualification), unless otherwise noted they are taken from Plaintiff's Response to Defendant's Statement of Undisputed Material Facts (Doc. No. 40), from Defendant's Responses to Plaintiff's Statement of Undisputed Material Facts in Opposition to Defendant's Motion for Summary Judgment (Doc. No. 45), or from other documents in the record that reflect that they are undisputed.

[2] The sole Defendant in this case is Meharry Medical College. Herein, "Defendant" is used to refer to Meharry Medical College in its capacity as the sole defendant in this case, while "Meharry" is used to refer, in references to underlying facts, to Meharry Medical College as a place or as an education institution (medical school).

[3] When citing to a page in a document filed by one of the parties, the Court endeavors to cite to the page number ("Page ___ of __") added by the Clerk's Office as part of the pagination process associated with Electronic Case Filing if such page number differs from the page number originally provided by the author/filer of the document.

[4] For purposes of the ADA, "disability" is a "physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(a). At least for purposes of the instant Motion, Defendant does not dispute that each of these three conditions constitutes a disability within the meaning of the ADA.

[5] Doc. No. 36-1 is the transcript of the deposition of Plaintiff. Each page of Doc. No. 36-1 contains four pages of the transcript. For the sake of consistency of citation, the Court's citations herein to Plaintiff's deposition testimony are to the page number of Doc. No. 36-1, not to the particular page of the transcript.

a disability. (Doc. No. 34 at 9). Based on his OCD and GAD diagnoses, Plaintiff requested and was granted testing accommodations for internal Meharry exams (i.e., exams given by Meharry as opposed to exams given by to some outside credentialing organization, such as the below-referenced USMLE) in June 2018 (Doc. No. 40 at 6).

## II.    **Plaintiff's Attempts at Passing the Step 1 Exam**

In order to obtain a medical license in the United States, medical students are required to pass the United States Medical Licensing Examination (USMLE),[6] a series of three exams testing students' medical knowledge. (Doc. No. 40 at 3). Meharry required all medical students admitted in 2015 to pass the first USMLE exam (Step 1) by June 30th of their second year of school. (Doc. No. 40 at 3). Meharry's stated school policy allows[7] students to attempt Step 1 three times and mandates dismissal if a student fails all three attempts. (Doc. No. 40 at 4). However, Meharry has permitted other students to take the STEP 1 test more than three times. (Doc. No. 45 at 3). The USMLE Board allows students to take Step 1 up to six times. (Doc. No. 45 at 3).

All accommodation requests for the USMLE exam must be approved by the National Board of Medical Examiners (NBME). (Doc. No. 40 at 3, 8). Medical schools are required to approve their student's test date and provide documentation of the student's prior accommodations before the NBME can begin to process the student's accommodation request. (Doc. No. 36-1 at 9). The NBME requires at least 60 days prior to the exam date to process an accommodation

---

[6]   According to its website, "[t]he USMLE®, or the United States Medical Licensing Examination® program, is owned by two entities: the Federation of State Medical Boards (FSMB) and the National Board of Medical Examiners." *See About the USMLE*, USMLE https://www.usmle.org/about-usmle (last visited Feb. 23, 2024).

[7] Occasionally herein, the Court makes statements using the present tense, with the understanding that the statement is equally applicable to all times here at issue.

request, and the process can take even longer if there is a large volume of student requests. (Doc. No. 40 at 3, 8).

Prior to his first attempt, Plaintiff felt concerned about his ability to pass Step 1 because his medical issues had interfered with his ability to adequately study for the exam. (Doc. No. 36-1 at 40). In August of 2018, Plaintiff requested that he be allowed to postpone his first attempt at Step 1 from September 2018 to December 2018 in order to give him sufficient study time. (Doc. No. 36-1 at 9). Meharry refused Plaintiff's request and required that he take his first attempt in September 2018 in compliance with the school's testing timetable. (Doc. No. 36-1 at 9). Plaintiff did not request accommodations from the NBME for his first attempt at Step 1 on September 23, 2018, and he took the test without accommodations on that date. (Doc. No. 40 at 7). He was informed that he got a failing score at the end of October. (Doc. No. 40 at 7; Doc. No. 36-1 at 10, 41).

Shortly after Plaintiff received his score, Dean McClure told him that he was still required to complete his second attempt at Step 1 by the end of December 2018. (Doc. No. 36-1 at 10, 41). On December 3, 2018, Plaintiff requested accommodations from the NBME for his second attempt at Step 1 on December 31, 2018. (Doc. No. 40 at 7). The same day, Plaintiff was informed by the NBME that his request likely would not be processed in time for the test, and he subsequently withdrew his request. (Doc. No. 40 at 8). Plaintiff took his second attempt at Step 1 on December 31, 2018 without accommodations and was informed in January that he received a failing score. (Doc. No. 40 at 8; Doc. No. 36-1 at 11, 41).

Following the receipt of his failing score, Meharry informed Plaintiff that he would be required to sit for his third attempt in March 2019. (Doc. No. 40 at 9). Plaintiff appealed that decision to Dean Mallett. (Doc. No. 40 at 9; Doc. No. 36-1 at 11, 41). Dean Mallett accepted

Plaintiff's postponement request in March, allowing him to take his third attempt in June. (Doc. No. 40 at 9; Doc. No. 36-1 at 11, 41).

On April 15, 2019, Plaintiff submitted a request for accommodations to the NBME for his upcoming third attempt at Step 1 on June 23, 2019. (Doc. No. 40 at 10). On May 2, 2019, the NBME informed Plaintiff that it required more recent medical documentation to process his request in time. (Doc. No. 40 at 10). At that juncture, Plaintiff was unable to schedule an appointment with his doctors to obtain the updated documentation before his June test date (Doc. No. 36-1 at 28, 30). Plaintiff subsequently withdrew his request for testing accommodations and took his third attempt at Step 1 on June 23, 2019 without accommodations (Doc. No. 40 at 11). Plaintiff later learned that he failed his third attempt, and then by letter dated August 2, 2019 was notified that he had been dismissed from Meharry. (Doc. No. 40 at 11).

### III.   Plaintiff's Appeal

After the dismissal, Plaintiff filed an appeal with Meharry requesting that he be allowed to sit for Step 1 a fourth time. (Doc. No. 40 at 11). During his appeal process, Plaintiff met with Dr. Dexter Samuels, a school administrator. (Doc. No. 36-1 at 14, 36-37). In support of his appeal to Dean Mallet, Plaintiff identified two medical students in the graduating class of 2019 who were permitted a fourth attempt on Step 1. (Doc. No. 40 at 12). Dr. Samuels told Plaintiff that "the fact that Meharry has done that in the past sets a precedent that they're willing to do that with other students" (referring to other students being allowed to attempt Step 1 a fourth time) and that "if there's any changes that were made in the policy, [then] you can argue that those could be applied to you because that's Meharry changing their precedent and that could be applied to a Meharry student that's currently attending the school" (referring to a new policy allowing the class of 2018 onward to take Step 1 after completion of their third year). (Doc. No. 45 at 6). In October 2019,

the appeal was denied (Doc. No. 45 at 6). At that time, aside from the Step 1 testing issue, Plaintiff was in good standing as a Meharry student. (Doc. No. 45 at 7).

## PROCEDURAL HISTORY

Plaintiff filed the present action requesting damages for Defendant's violations of the ADA, breach of contract, and negligent misrepresentation on June 22, 2020. (Doc. No. 1-1 at 1). Plaintiff brings two claims under the Americans with Disabilities Act ("ADA"): one for discriminatory dismissal and one for a failure to accommodate. Plaintiff also brings one breach-of-contract claim and one negligent-misrepresentation claim. The instant Motion is now ripe for review.

## LEGAL STANDARD

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). In other words, even if genuine, a factual dispute that is irrelevant or unnecessary under applicable law is of no value in defeating a motion for summary judgment. *See id.* at 248. On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine[.]'" *Id.*

A fact is "material" within the meaning of Rule 56(c) "if its proof or disproof might affect the outcome of the suit under the governing substantive law." *Reeves v. Swift Transp. Co.*, 446 F.3d 637, 640 (6th Cir. 2006) (citing *Anderson*, 477 U.S. at 248), *abrogated on other grounds by Young v. United Parcel Serv.*, 575 U.S. 206 (2015). A genuine dispute of material fact exists if the

evidence is such that a reasonable jury could return a verdict for the non-moving party. *Harris v. Klare*, 902 F.3d 630, 634–35 (6th Cir. 2018).

The party bringing the summary judgment motion has the initial burden of identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 627–28 (6th Cir. 2018) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Alternatively, the moving party may meet its initial burden by otherwise "showing"—even without citing materials of record—that the nonmovant "cannot produce admissible evidence to support" a material fact (for example, the existence of an element of a nonmovant plaintiff's claim). Fed R. Civ. P. 56(c)(1)(B). If the summary judgment movant meets its initial burden, then in response the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Pittman*, 901 F.3d at 628.[8] Importantly, "[s]ummary judgment for a defendant [that has met its initial burden as the movant] is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial.'" *Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 805–06 (1999) (quoting *Celotex,* 477 U.S. at 322).

Any party asserting that a fact cannot be or genuinely is disputed—i.e., any party seeking summary judgment and any party opposing summary judgment, respectively—can support the assertion either by: (a) citing to materials in the record, including, but not limited to, depositions, documents, affidavits, or declarations, Fed. R. Civ. P. 56(c)(1)(A), or (b) "showing" (i) that the adverse party cannot produce admissible evidence to raise a genuine dispute as to that fact or (ii) that contrary to the claim of the adverse party, the materials cited by the adverse party do not actually establish the absence or presence (as the case may be) of a genuine dispute as to that fact.

---

[8] Courts (appropriately) at times refer interchangeably to a party being able to raise a genuine issue as to a fact and a reasonable jury being able to find in the party's favor on that fact, and this Court does likewise.

In reviewing a motion for summary judgment, this court must view the evidence in the light most favorable to the non-moving party. *Tlapanco v. Elges*, 969 F.3d 638, 647 (6th Cir. 2020) (quoting *Anderson*, 477 U.S. at 248). Likewise, the court should view the facts and draw all reasonable inferences in favor of the non-moving party. *Pittman*, 901 F.3d at 628. Credibility judgments and weighing of evidence are improper. *Hostettler v. College of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018). As noted above, where there is a genuine dispute as to any material fact, summary judgment is not appropriate. *Id*. The court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id*. The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient to survive summary judgment; rather, there must be evidence upon which the jury could reasonably find for the non-moving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

On a motion for summary judgment, a party may object that the supporting materials specified by its opponent "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Upon such an objection, the proponent of the supporting material must show that the material is admissible as presented or explain how it could be presented in a form that would be admissible. *Thomas v. Haslam*, 303 F. Supp. 3d 585, 624 (M.D. Tenn. 2018); *Mangum v. Repp*, 674 Fed. App'x. 531, 536–37 (6th Cir. 2017) (citing Fed. R. Civ. P. 56(c) advisory committee's note to the 2010 amendment).

The Court will take a moment here to discuss the *McDonnell Douglas* standard and its applicability to motions for summary judgment in the context of employment-discrimination claims in the federal judicial system. The Sixth Circuit has summarized the applicability and workings of the *McDonnell Douglas* burden shifting framework as follows:

> A plaintiff may show discrimination by direct evidence, or a plaintiff lacking direct evidence of discrimination may succeed on a Title VII claim by

presenting indirect evidence under the framework first set forth in *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802–03, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973).

To succeed under the *McDonnell Douglas* framework, the plaintiff must first make out a *prima facie* case of discrimination by a preponderance of the evidence . . . . Once the plaintiff makes out a *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for" the adverse employment action. Should the defendant do so, the plaintiff then must prove by a preponderance of the evidence that the stated reasons were a pretext for discrimination.

*Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 606–07 (6th Cir. 2019) (citations omitted).

The burden-shifting approach in *McDonnell Douglas* applies only to discrimination or retaliation claims premised on so-called indirect (*i.e.*, circumstantial) evidence.[9] *Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 606–07 (6th Cir. 2019). The undersigned has recently explained:

When a defendant-movant challenges a plaintiff's ability to reach a jury on an indirect-evidence theory of employment discrimination, there are a number of steps potentially implicated, though not all of them necessarily need be addressed in the analysis. The number of steps to be addressed depends on whether the defendant-movant seeks to prevail at the first step, or at the second and third step, or at both the first step and the second and third step . . .

To prevail at the first step of *McDonnell-Douglas*, the defendant, as the summary-judgment movant, must meet its initial burden of showing an absence of evidence from which a reasonable jury could find the plaintiff established a *prima facie* case. *E.g., Banks v. State of Ohio*, No. 94–3866, 1995 WL 118993, * 2 (6th Cir. Mar. 20, 1995). If the defendant does so, then the burden shifts to the plaintiff to show that at trial it could "make out a *prima facie* case of discrimination by a preponderance of the evidence." *Redlin*, 921 F.3d at 606. If the plaintiff fails to succeed here, then the plaintiff suffers summary judgment in favor of the defendant on the claim. But if the plaintiff succeeds here, defendant does not prevail at the first step and is relegated to try instead to prevail at the second and third steps of *McDonnell-Douglas*.

---

[9] "Direct evidence is such that, if true, requires the conclusion that unlawful retaliation [or discrimination] was a motivating factor without any inferences or presumptions." *Banks v. Bosch Rexroth Corp.*, 15 F. Supp. 3d 681, 693 (E.D. Ky. 2014), *aff'd*, 610 F. App'x 519 (6th Cir. 2015) (citing *Norbuta v. Loctite Corp*., 181 F.3d 102 (6th Cir. 1999)). Indirect evidence is evidence that requires the court to make inferences to conclude that unlawful retaliation or discrimination was a motivator for an adverse employment action.

At the second step, the defendant-movant has the burden (of production only) to show a legitimate and non-discriminatory reason for its action(s). *Brown*, 814 F. App'x at 80 (noting, on the defendant's motion for summary judgment that it is a "burden of production [that potentially] shifts to the defendant to show a legitimate, nondiscriminatory reason for the way it treated the plaintiff"). If the defendant successfully shows evidence of a non-discriminatory reason for its alleged discriminatory act, the court proceeds to the third step, where "the plaintiff must rebut the proffered reason by producing evidence from a [*sic*] which a reasonable jury could conclude that the proffered reason is actually a pretext" for unlawful discrimination. *Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 807 (6th Cir. 2020) (quotations omitted).

*Veith v. Tyson Fresh Meat, Inc*., No. 3:19-CV-01065, 2022 WL 1231229, at *9–10 (M.D. Tenn. Apr. 26, 2022). As will be further discussed below, one of Plaintiff's claims is premised on indirect evidence and thus subject to the *McDonnell Douglas* framework.

Finally, it is worth emphasizing in this case how *not* to go about establishing that a fact is not in dispute. The point, specifically, is that a party does not establish that a fact is not in dispute merely by citing evidence (other than an admission or statement of the opposing side) that supports the existence of that fact; it is one thing to show that evidence exists to support the existence of a fact, and it is another to show that there is no evidence to refute the existence of the fact or to show in some other way that the fact is not in dispute. And so the Court must reject out of hand, for example, a party's assertion that a fact is undisputed where the only support for the assertion is a citation to the party's own deposition testimony. (*e.g.*, Doc. No. 39 at 7).

## DISCUSSION

I. **Defendant Will Be Denied Summary Judgment as to Plaintiff's Claim for Disability-Based Discrimination.**

    A. **Defendant has failed to show that Plaintiff's evidence is insufficient for a jury to find in his favor on an indirect-evidence prima facie case of disability discrimination.**

Plaintiff does not allege that there is direct evidence of disability-based discrimination. Rather, his claim of disability discrimination is premised on indirect evidence and thus is subject to the *McDonnell Douglas* framework.

Defendant asserts that to establish an indirect evidence prima facie case of disability-based discrimination in an academic program in violation of the ADA (as required to survive the first step of *McDonnell Douglas*), a plaintiff must show: 1) he was disabled;[10] 2) he was otherwise qualified to continue in his academic program;[11] and 3) he was dismissed on the basis of his

---

[10] The ADA refers to persons having a "disability," rather than to persons being "disabled." For this reason, and because the Court perceives that it is generally and appropriately considered more accurate and sensitive to refer to someone as merely *having* a condition (a disability) rather than *being* something ("disabled"), the Court endeavors to use the former rather than the latter phrasing. But given the terminology used by some of the courts cited herein, that is not always the best option. In any event, the Court discerns (and intends to convey) no substantive conceptual distinction between having a disability and being disabled, and it uses the terms interchangeably.

[11] In other cases, the Sixth Circuit used the term "qualified," rather than "otherwise qualified," to refer to the second element. *E.g.*, *Becker v. Elmwood Loc. Sch. Dist.*, 519 F. App'x 339, 342 (6th Cir. 2013) (citing *Whitfield v. v. Tenn.*, 639 F.3d 253, 259 (6th Cir. 2011). The undersigned has concluded that with respect to the elements of an indirect-evidence *prima facie* case of disability discrimination under the ADA, the applicable concept is the plaintiff being *qualified* (with or without reasonable accommodation). The undersigned need not dwell herein on the basis for that conclusion, other than to say that the term "otherwise qualified" tends to suggest inappropriately that the mere fact that someone has a disability renders him or her unqualified such that the best he or she can hope for is to be "otherwise" qualified, *i.e.*, qualified but for the fact that the disability somehow necessarily makes him or her unqualified. In the context of the second element, the concept of the plaintiff being *otherwise* qualified (with or without reasonable accommodation) is simply inapplicable, and if a court uses the term "otherwise qualified" to define the second element, the court is being inexact and could not properly mean (and typically clearly does not intend to mean) anything other than "qualified" (with or without reasonable accommodation). To the extent that the Court herein uses the term "otherwise qualified" because the parties or some courts have used that term, it does not mean to suggest that "qualified" is not the more precise term.

disability. In support of this assertion, Defendant accurately cites *Shaikh v. Lincoln Mem'l Univ.*, 608 F. App'x 349, 353–54 (6th Cir. 2015) (citing *Kaltenberger v. Ohio Coll. of Podiatric Med.*, 162 F.3d 432, 435 (6th Cir. 1998)). The citation does support the notion that this is the accurate test, and Plaintiff does not dispute that this is the appropriate test, so the Court will use it.[12]

The purpose of an indirect-evidence prima facie case is to create a "presumption that the employer unlawfully discriminated against the employee." *Wixson v. Dowagiac Nursing Home*, 87 F.3d 164, 169 (6th Cir. 1996) (quoting *Tex. Dept. of Cmty. Affs. v. Burdine*, 450 U.S. 248, 254

---

[12] The cited Sixth Circuit cases do not stand alone in stating the view that this is the proper statement of elements of an indirect-evidence prima facie case of disability discrimination. *Neal v. E. Carolina Univ.*, 53 F.4th 130, 135 (4th Cir. 2022) ("To state a prima facie case of ADA discrimination in the context of a university's academic programs, a 'plaintiff must establish that (1) [s]he has a disability, (2) [s]he is otherwise qualified to participate in the defendant's program, and (3) [s]he was excluded from the program on the basis of h[er] disability.'" (quoting *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 461 (4th Cir. 2012)). But the undersigned seriously questions whether this should be the test for an indirect-evidence prima facie case of disability discrimination and also whether the test actually survived the Sixth Circuit's decision in *Whitfield v. Tenn.*, 639 F.3d 253, 259 (6th Cir. 2011); *Whitfield* cogently explained why the analogous three-element test that had been used in *employment* (as opposed to *academic-program)* discrimination cases made no sense in light of what the purpose and role of an indirect-evidence prima facie case of discrimination under *McDonnell Douglas*. Accordingly, *Whitfield* replaced that three-element test with a five-element test that is still in use today. *See, e.g., Hrdlicka v. Gen. Motors, LLC*, 63 F.4th 555, 566–67 (6th Cir. 2023) ("To establish a prima facie case, an employee must demonstrate that (1) she has a disability, (2) she is otherwise qualified for the job 'with or without reasonable accommodation,' (3) she 'suffered an adverse employment decision,' (4) her employer 'knew or had reason to know' of her disability, and (5) her position remained open, or she was replaced.") (quoting *Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 395 (6th Cir. 2017) (quoting *Whitfield*, 639 F.3d at 259)). The undersigned sees no reason at all that this five-part test should not be modified (to the minor extent necessary to make it applicable to the academic-program context rather than employment context) and be used in the academic program context, *see Jose v. Northside Indep. Sch. Dist.*, No. SA-19-CV-0393-JKP, 2021 WL 1111150, at *6 (W.D. Tex. Mar. 23, 2021)). Absent objection by the parties, however, the Court will not craft an analogous five-element test for the academic-program context and instead will use the three-element test for an indirect evidence prima facie case that was invoked by Defendant; the Court will also cite statements from cases analyzing that test as applicable in the academic-program context even if they are framed specifically in terms of the employer-employee context.

(1981)). Establishing a prima facie case is not difficult. *Harris v. City of Akron, Ohio*, 836 F. App'x 415, 419 (6th Cir. 2020).

Defendant challenges Plaintiff's ability to demonstrate the second element, claiming that Plaintiff's poor academic performance shows that he was not qualified to continue in his academic program. Defendant also challenges Plaintiff's ability to demonstrate the third element, claiming that Plaintiff lacks sufficient evidence to prove that he was dismissed based on his disability. Finally, Defendant challenges Plaintiff's ability to prove that Defendant knew of one of his disabilities; Defendant asserts that it was aware of Plaintiff's OCD and GAD but not his IBS, and therefore Plaintiff cannot prevail on an ADA discrimination claim based on his IBS disability.

1. <u>Defendant has failed to meet its initial burden to show a presumptive lack of evidence that Plaintiff could meet Meharry's academic requirements with reasonable accommodations, and even if Defendant had done so, Plaintiff in rebuttal has pointed to evidence suggesting that Plaintiff could make a showing adequate for a rational jury to conclude that Plaintiff could have met those academic requirements.</u>

A student with a disability is otherwise qualified to participate in an academic program if he can meet its requirements with reasonable accommodations (or, for that matter, without any accommodation). *See Carten v. Kent State Univ.*, 78 F. App'x 499, 500–01 (6th Cir. 2003); *Kaltenberger*, 162 F.3d at 435. Defendant argues that Plaintiff was not otherwise qualified, because (according to Defendant) even with reasonable accommodations he would not have passed the Step 1 exam if permitted by Defendant to take it a fourth time. To support this assertion, Defendant points to Plaintiff's academic struggles in his first year that led to his deceleration in the medical-school program. Defendant also emphasizes that Plaintiff's scores on all three of his attempts at Step 1 fell far below the minimum passing score. These facts demonstrate Plaintiff's academic struggles, but they do not lead to the conclusion that Plaintiff necessarily would fail Step 1 if he were permitted to take it a fourth time, with proper accommodations. So the Court cannot

find that Defendant met its initial burden as the movant to show that Defendant is not otherwise qualified.

Defendant argues as follows:

It is undisputed that [Meharry's] policies applicable to Plaintiff prevented him from moving forward in his third-year studies until he had successfully completed USMLE Step 1. It is also undisputed that [Meharry's] policies permitted him three attempts at USMLE Step 1 before being dismissed. Because Plaintiff was unable to successfully complete USMLE Step 1 within the three attempts, he was not qualified to continue his studies at [Meharry's]. This is particularly true where Plaintiff was provided additional time to prepare and sit for Step 1. Requiring Meharry to provide Plaintiff with a fourth attempt at USMLE Step 1 prior to his dismissal would result in Meharry having to make fundamental and substantial modifications to its academic program, which it is not obligated to do.

Courts have previously considered whether medical schools are obligated to waive their policies relating to USMLE passage as an accommodation for a student's disability and concluded that no such obligation exists.

(Doc. No. 34 at 10-11) (citation omitted). To this, however, Plaintiff has a persuasive response.

Providing a fourth opportunity to Plaintiff to take the Step 1 exam would not, for example, result in Meharry "having to make fundamental and substantial modifications to its academic program." Defendant does not deny having made a fourth attempt available to other students. [Dep. Dean V. Mallett, p. 37: 18-22]. It stands to reason, therefore, that if a modification to its program was made [via the granting of this kind of request], that was already a fait accompli when Plaintiff made the same request.

(Doc. No. 39 at 9). In short, the Court would not begrudge Meharry having a "three attempts maximum" policy and enforcing it against Plaintiff. But a jury could find that *de facto* there was no such policy—i.e., that there actually was no firm requirement to complete Step 1 within three attempts and that therefore Plaintiff did not fail any requirement by not completing Step 1 within three attempts.

2. <u>Defendant has failed to meet its initial burden to show a presumptive lack of evidence that it dismissed Plaintiff based on his disability.</u>

In addressing Defendant's argument with respect to the third element of an indirect-evidence prima facie case of disability discrimination, the Court must highlight something crucial regarding the

way Rule 56 works. Specifically, facing a motion for summary judgment under that rule, a plaintiff does not have to show *anything* on an issue unless and until the burden has shifted to the plaintiff on that issue. The Court here will re-iterate (with particular emphases) the legal standard discussed above. The *movant bears the burden of proving* that there are no genuine issues of material fact contained in the record. *See Adams v. Union Carbide Corp*., 737 F.2d 1453 (6th Cir. 1984). The movant typically does so *by referencing specific portions of the record. See, e.g., Johnson v. Ford Motor Co*., 13 F.4th 493, 502 (6th Cir. 2021). Alternatively, under Rule 56(c)(1)(B), the moving party may demonstrate the absence of any genuine issue of material fact by "*show[ing]*"—even without citing materials of record—that the nonmovant "cannot produce admissible evidence to support [a material] fact." *See* Fed. R. Civ. P. 56(c)(1)(B).

The upshot of Rule 56 (and *Celotex* and its progeny) is that the defendant-movant must meet this burden before the burden falls on the plaintiff to make any countervailing showing.

Defendant's entire argument in its brief in support of the Motion consisted of the following:

> In this case, Plaintiff has failed to present any evidence that his dismissal was based on anything other than his failure to successfully complete USMLE Step 1 within three attempts. To the extent that Plaintiff attempts to rely on Meharry having provided two other students with a fourth attempt, he admits that he does not know anything about the academic performance or previous USMLE Step 1 scores of those students. [Dawit Dep. at 170:21-172:23]. Likewise, Plaintiff has failed to present any evidence that those students were not dismissed following their third attempt and received a fourth attempt only through the appeal of their dismissal. As a result, Plaintiff cannot establish that similarly situated nondisabled students were treated more favorably.

(Doc. No. 34 at 12). A defendant-movant does not meet its above-referenced burden in this manner i.e., by merely *asserting* that the plaintiff "cannot" establish an element of its claim; instead, the defendant-movant must make an initial *showing* tending to affirmatively indicate that the plaintiff could not establish the element. Nor can that assertion become a showing merely by indicating that certain evidence is not available, unless a defendant provides a justification for why such evidence

is necessary for Plaintiff's case.[13] Relatedly, it gets a defendant-movant nowhere to argue, in its brief in support of a motion for summary judgment, that the "[p]laintiff has failed to present any evidence"; prior to the filing of the motion for summary judgment, the plaintiff typically (and in this particular case) never had any occasion (or any appropriate mechanism) to "present" evidence to the Court.

Defendant needed to do more here to discharge its initial burden (so as to shift the burden to Plaintiff) of showing Plaintiff's lack of evidence to establish the third element. Thus, the Court rejects Defendant's argument regarding the third element and declines to find that Plaintiff's disability discrimination claims fail based on the purported absence of evidence to show the third element of an indirect-evidence prima facie case of discrimination.

3. Defendant's purported lack of knowledge of Plaintiff's IBS diagnosis is irrelevant to whether Defendant prevails on the third element, given that Defendant has not met its initial burden on the third element with respect to OCD and GAD.

Defendant claims, apparently without refutation by Plaintiff, that at the relevant times it was unaware of Plaintiff having IBS. Under the ADA, OCD and GAD may both qualify as protected disabilities, and Defendant acknowledges that it knew of Plaintiff's OCD and GAD

---

[13] One way for a defendant-movant to make this initial showing would be, for example, to show where the plaintiff was asked what information he has suggesting the existence of an element and responded that he had no such information. That kind of request—a request to identify *any* supporting information—is quite different from what occurred here, where Plaintiff was asked about specific details relating to an element. Defendant has not explained why *Plaintiff's* personal knowledge of *these* details (as opposed to some other evidence known to his counsel via, for example, discovery) is dispositive of the element of the claim. Pointing to deposition testimony suggesting the absence of *necessary* evidence is very different from blithely asserting that there is a lack of such evidence or that the plaintiff has not (in the lead-up to the motion for summary judgment, during which time the plaintiff typically would have no reason to "present" any evidence to support his claim) presented any such evidence.

   In fairness to Defendant, it is far from the only defendant-movant that has done what Defendant did here, i.e., rely on the mere assertion that the plaintiff has not presented evidence of a necessary element of the claim. The Court understands where counsel might get the impression that this approach will suffice. And indeed, it seems that sometimes defendant-movants successfully get by with this approach. Alas, based on his view of what Rule 56 and *Celotex* and its progeny require, the undersigned cannot countenance such an approach.

diagnoses at the time that he requested accommodations. *See* (Doc. No. 34 at 5). A finding that Defendant knew of Plaintiff's OCD and GAD and dismissed him based on those disabilities would suffice to find that Defendant violated the ADA. And, as noted above, Defendant has not met its burden to make a preliminary showing that Plaintiff was not dismissed based on some disability (including, potentially, OCD and GAD).[14]

### B. Defendant has failed to meet its initial burden of showing that Plaintiff's evidence is insufficient to create a genuine dispute of material fact on the issue of pretext.

After the plaintiff's establishment of a prima facie case, the second step of the *McDonnell Douglas* framework shifts the burden to the defendant to provide a legitimate, non-discriminatory reason for its adverse action.

> At the second step, the defendant-movant has the burden (of production only) to show a legitimate and non-discriminatory reason for its action(s). *Brown*, 814 F. App'x at 80 (noting, on the defendant's motion for summary judgment that it is a "burden of production [that potentially] shifts to the defendant to show a legitimate, nondiscriminatory reason for the way it treated the plaintiff"). If the defendant successfully shows evidence of a non-discriminatory reason for its alleged discriminatory act, the court proceeds to the third step, where "the plaintiff must rebut the proffered reason by producing evidence from a [*sic*] which a reasonable jury could conclude that the proffered reason is actually a pretext" for unlawful discrimination. *Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 807 (6th Cir. 2020) (quotations omitted).

---

[14] In its reply brief, Defendant could have asserted that it needed to refute only that Plaintiff was dismissed on the basis of his *IBS*—without additionally having to refute that he was dismissed on the basis of his *OCD* and *GAD*—because Plaintiff, in attempting to affirmatively show (which, the Court has decided above, he did not ultimately have to do) that he was "otherwise qualified," relied on the notion that he would have been qualified had he received an accommodation for his IBS in particular. But Defendant made no such assertion. And, for reasons alluded to somewhat in a footnote above, the Court would have rejected such an assertion anyway. That is, the Court does not perceive that in establishing the third element of an indirect-evidence prima facie case of disability discrimination, a plaintiff who alleges multiple disabilities is limited to asserting termination based on the particular subset of those disabilities that, had they been accommodated by the defendant, would have made the plaintiff otherwise qualified. Accordingly, Defendant cannot defeat the third element of Plaintiff's prima facie case by showing only that he was not terminated based on his IBS.

*Veith v. Tyson Fresh Meat, Inc.*, No. 3:19-CV-01065, 2022 WL 1231229, at *9–10 (M.D. Tenn. Apr. 26, 2022) (footnote omitted).

If Defendant succeeds in taking the analysis to the third step, and if the plaintiff fails to provide sufficient evidence from which a reasonable jury could conclude that the proffered reason is actually pretext for discrimination, summary judgment is properly granted to the defendant. A plaintiff can prove pretext "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Wexler v. White's Fine Furniture, Inc.,* 317 F.3d 564, 576 (6th Cir. 2003) (quoting *Dews v. A.B. Dick Co*., 231 F.3d 1016, 1021 (6th Cir. 2000)).

Defendant's purported reason[15] for dismissing Plaintiff is his failure to pass Step 1 within three attempts as required by school policy. This purporting of a legitimate, non-discriminatory reason enables Defendant to survive step two and reach steps three of *McDonnell Douglas*. However, as indicated above, it is undisputed that in the past, other Meharry students failed to pass Step 1 within three attempts yet were not dismissed from the medical-school and instead were permitted a fourth attempt. Based on this fact, a reasonable jury could conclude that Plaintiff's failure to pass Step 1 within three attempts was not the actual reason for his dismissal in that it (a) did not actually motivate Plaintiff's dismissal, and/or (b) was insufficient to warrant Plaintiff's dismissal. Therefore, Plaintiff has provided sufficient evidence from which a reasonable jury could conclude that Defendant's proffered reason was pretext for disability-based discrimination.

---

[15] This reason was given at the time of dismissal and has not been asserted here for the first time. This is crucial, in the Court's view, to Defendant surviving at step two because, as noted above, it is not enough for a defendant-employer merely to articulate after the fact what the reason for dismissal supposedly was; the defendant-employer instead must point to evidence that this was the purported reason at the time of dismissal.

Defendant faults Plaintiff for, essentially, not debunking the notion that Plaintiff's situation was different from the other students such that there were legitimate reasons to dismiss him based on his three failures even if the other students were not dismissed. (Doc. No. 34 at 12) ("To the extent that Plaintiff attempts to rely on Meharry having provided two other students with a fourth attempt, he admits that he does not know anything about the academic performance or previous USMLE Step 1 scores of those students. [Dawit Dep. at 170:21-172:23]. Likewise, Plaintiff has failed to present any evidence that those students were not dismissed following their third attempt and received a fourth attempt only through the appeal of their dismissal."); (Doc. No. 46 at 5) ("Plaintiff was not qualified to continue his education at Meharry and he has failed to carry his burden that he was similarly situated to other students who he claims were permitted a fourth attempt on Step 1"). But Defendant cites no authority for the proposition it needs the Court to accept: that when a plaintiff has suffered adverse action for a stated reason and has shown that other persons with the same status (here, students) did not suffer the same adverse action even though the stated reason also existed in their circumstances (here, failing the Step 1 exam three times), the plaintiff nevertheless does not sufficiently establish a jury issue as to pretext unless the plaintiff shows that the other persons were similarly situated. True, Defendant does cite a case in purported support of this proposition. But in the cited portion of that case, *Benitez v. Tyson Fresh Meats, Inc.*, No. 3:18-CV-00491, 2022 WL 58399, at *43 (M.D. Tenn. Jan. 5, 2022), this Court (with the undersigned presiding) was not addressing what a plaintiff, opposing a motion for summary judgment, must do to prevail on the issue of pretext at step three; instead, it was addressing what such a plaintiff must do to establish the fourth element of an indirect-evidence prima facie case of discrimination (under the five-element test that the Court, following

Defendant's lead, is not even using here, as discussed in a footnote above). It simply is not helpful on the issue of pretext.

In addition to lacking authority for the proposition asserted by Defendant, the Court independently rejects it, at least in the present context. The Court believes that where the plaintiff has shown the non-application to other persons of the specific rule stated as the reason for an adverse action against the plaintiff, the plaintiff has made a showing of pretext sufficient to reach a jury even without affirmatively showing that there was no legitimate reason why the rule should not be applied to the others the same way it was applied to the plaintiff. That is, where (as here, as far as the parties indicate) the reason for the adverse action against the plaintiff is a particular black-letter rule—here, the three-failures rule—that is applied without any explanation of why an exception could not be made for the plaintiff, the plaintiff can show pretext by showing other exceptions without debunking that there were legitimate reasons for the rule not being applied to those others.

In summary, to obtain summary judgment on this claim, Defendant needed to prevail either at *McDonnell Douglas*'s first step or third step. It has done neither, so summary judgment on this claim will be denied.

II.    **Plaintiff's Failure-to-Accommodate Claim is Properly Construed as Based Solely on a failure to accommodate Plaintiff by allowing a fourth attempt at the Step 1 exam, and Defendant Will Be Denied Summary Judgment on the Failure-to- Accommodate Claim as Thus Construed.**

Defendant additionally seeks summary judgment on Plaintiff's failure-to-accommodate claim. ADA claims premised on failure to accommodate "necessarily involve direct evidence" and

"the *McDonnell Douglas*[16] burden shifting approach is unnecessary."[17] *Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 416 (6th Cir. 2020) (internal quotations and citations omitted). The Sixth Circuit

> uses a multi-part test to evaluate reasonable accommodation claims:

> (1) The plaintiff bears the burden of establishing that he or she is disabled[, and] (2) The plaintiff bears the burden of establishing that he or she is 'otherwise qualified' for the position despite his or her disability: (a) without accommodation from the employer; (b) with an alleged 'essential' job requirement eliminated; or (c) with a proposed reasonable accommodation. (3) The employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer.

---

[16] The undersigned notes that he inserted the bracketed reference to make clear that it is the *McDonnell Douglas* version of burden shifting in particular that is inapplicable here because failure-to-accommodate claims involve direct evidence. Another kind of burden shifting actually *is* (at least potentially) applicable to such claims. Specifically, as noted below, if the plaintiff establishes the elements of a failure-to-accommodate claim, the burden shifts to the defendant to show "[either that] the challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer." This one-step, uni-directional burden-shifting is not the potentially two-step and bi-directional burden-shifting prescribed by *McDonnell Douglas*, but it is a kind of burden-shifting nonetheless.

[17] In making this statement, *Fisher* took pains to debunk occasional Sixth Circuit cases that held to the contrary:

> [W]e have occasionally—though generally in unpublished cases—analyzed a failure-to-accommodate claim under the indirect test. *See, e.g.*, *Keogh v. Concentra Health Servs.*, 752 F. App'x 316, 326 (6th Cir. 2018); *Mosby-Meachem v. Memphis Light, Gas & Water Div.*, 883 F.3d 595, 603 (6th Cir. 2018); *Aldini v. Kroger Co. of Mich.*, 628 F. App'x 347, 350 (6th Cir. 2015); *Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x 974, 982–83 (6th Cir. 2011). These cases do not explain why they apply the indirect test rather than the direct, nor do they distinguish *Kleiber* and its progeny. And each can be traced back to a single case, *DiCarlo v. Potter*, that applied the indirect test when analyzing a failure to accommodate claim under the Rehabilitation Act, not the ADA. 358 F.3d 408, 419 (6th Cir. 2004). Our court, sitting en banc, has explained that though the two statutes have many similarities, they are not identical. *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 314–17 (6th Cir. 2012) (en banc). *Kleiber*, our foundational case establishing that ADA failure to accommodate claims are analyzed pursuant to the direct test, controls.

*Fisher*, 951 F.3d at 416–17 (footnote omitted). The Court is satisfied that *Fisher* adequately states prevailing Sixth Circuit law, and indeed its rationale (which the Court need not delve into here) seems sound.

*Tchankpa v. Ascena Retail Grp., Inc.,* 951 F.3d 805, 811 (6th Cir. 2020) (quoting *Kleiber v. Honda of Am. Mfg.*, 485 F.3d 862, 869 (6th Cir. 2007) (quoting *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 452 (6th Cir. 2004))); *accord Fisher*, 951 F.3d at 417 (quoting *Kleiber*, 485 F.3d at 869).[18]

The Court is satisfied that this test should be employed in the current academic-program context, albeit by modifying "job requirement" to read as "academic requirement."

---

[18] The undersigned perceives problems with the direct-evidence test articulated by the Sixth Circuit. Under that "multi-part" (*i.e.*, three-element) test, a plaintiff can establish a (direct-evidence) case of failure to accommodate if the plaintiff: (i) satisfies element number one (1) and, additionally, satisfies element number two (2) *specifically by satisfying the first of the three alternatives for satisfying the second element,* namely, that she was qualified for the position despite her disability without accommodation from the employer. But a plaintiff who succeeds taking this path has not in any way whatsoever implicated the notion of accommodation; the plaintiff has not had to establish that she made a request for an accommodation, or that a request for an accommodation was denied, or that any accommodation that was requested was reasonable. Indeed, it is hard to see how any request for an accommodation could be reasonable when, as is specifically contemplated by the first element, the plaintiff does not even need it. So a plaintiff satisfying the first alternative of element number two has established a claim for failure to accommodate without presenting evidence that has anything to do with accommodation, let alone a failure by the employer to accommodate by denying a request for a reasonable accommodation. However, this Court is bound to follow prevailing Sixth Circuit precedent, and so it applies the test of *Kleiber/Fisher.* As for the second of the two alternatives for satisfying the second element, it likewise does not refer to a proposed accommodation, reasonable or otherwise. True, in some cases, the elimination of an allegedly essential job requirement might be plaintiff's proposed accommodation and might (if the job requirement is not actually essential) be reasonable. But as indicated by the Sixth Circuit, a plaintiff can satisfy the second element based on this second alternative irrespective of whether the plaintiff ever proposed any reasonable accommodation (be it the elimination of an essential job requirement or something else). But unlike the first alternative for satisfying the second element, at least the second alternative *could* in a particular case have something to do with a reasonable request for an accommodation.

Relatedly, the second of the three options for satisfying the second element of the *prima facie* case (*i.e.*, showing that the plaintiff is qualified for the academic program with an academic requirement eliminated) is fully encompassed within the third option (*i.e.*, showing that the plaintiff is qualified for the program with a proposed reasonable accommodation) *when the proposed reasonable accommodation is the elimination of a job requirement.* That is, if the plaintiff has shown that the elimination of an academic requirement is a *reasonable* accommodation, the plaintiff necessarily also has shown that the plaintiff is qualified for the job with that job requirement eliminated. On the other hand, the second requirement can be satisfied even if the third requirement is not; a plaintiff can be qualified for a program with a particular academic requirement eliminated even if the proposed elimination of such academic requirement is not a reasonable proposed accommodation because the job requirement turns out to be essential; when this is the case, the plaintiff nevertheless must show (due to the black-letter rule that exists independently of the two-element "multi-part" test) that the proposed accommodation is reasonable.

That the undersigned finds it necessary to lay all of this out in order to make sense of the multi-part test, and its relationship with the black-letter rule, suggests that perhaps the entire analysis of a failure-to-accommodate claim should be revisited by the Sixth Circuit (or Supreme Court).

Additionally, the black-letter rule is that the plaintiff bears the burden of showing that she proposed an accommodation and that the proposed accommodation is reasonable. *Tchankpa*, 951 F.3d at 812. Candidly, the undersigned is not sure what to make of this. This burden is not expressed in the so-called multi-part test as stated above, meaning that the multi-factor test as stated is, unhelpfully, simply incomplete. Moreover, as noted in a footnote above, an employee can satisfy the second element of a failure-to-accommodate claim without making any showing that has anything to do with a proposed accommodation (reasonable or otherwise). For a plaintiff that does so, it seems strange to turn around and require that he or she show that he or she proposed a reasonable accommodation. But otherwise, the requirement for such a showing makes perfect sense, and the Court will enforce it as required by binding precedent.

As indicated above, if the plaintiff carries his or her burden, the employer can then raise a defense that the "challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer." *Kleiber*, 485 F.3d at 869 (quoting *Hedrick v. W. Rsrv. Care Sys.*, 355 F.3d at 452).[19]

---

[19] The undersigned previously has noted:

> Not insignificantly, one part of the analysis of the plaintiff's *prima facie* case overlaps with one part of the analysis of whether the defendant has met its burden to establish one of the two defenses (assuming that the plaintiff successfully shifted such burden to the defendant). Specifically, "[i]n failure-to-accommodate claims where the employee requests an 'accommodation that exempts her from an essential function,' 'the essential functions and reasonable accommodation analyses run together.' One conclusion (the function is essential) leads to the other (the accommodation is not reasonable)." *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 763 (6th Cir. 2015) (quoting *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237–38 (9th Cir. 2012)). In other words, if the defendant has a valid defense that the job requirement proposed by the plaintiff to be eliminated—and thereby make her qualified under the *remaining* job criteria—is "essential," that necessarily means that the proposed elimination of such requirement is not a "reasonable accommodation" for purposes of the *third* alternative for satisfying the second element of the plaintiff's *prima facie* case. However, even if the job requirement proposed to be eliminated is essential, a plaintiff still can satisfy the *second* alternative.[10] In other words,

In a manner that is both helpful to the Court and fair to Plaintiff, Defendant identifies the apparent bases for Plaintiff's failure-to-accommodate claim as follows:

> Although somewhat unclear, Plaintiff appears to contend that Meharry denied him reasonable accommodation because he was: (1) not provided testing accommodations for Meharry internal examinations [DE 25, First Amended Complaint at ¶¶ 9, 12]; (2) not provided testing accommodations by Meharry for USMLE Step 1 [DE 25, First Amended Complaint at ¶ 82]; (3) not provided sufficient time to request and receive approval from NBME for testing accommodations on USMLE Step 1 [DE 25, First Amended Complaint at ¶ 21; Dawit Dep. at Exhibit 8, Plaintiff's Responses to First Set of Interrogatories and Requests for Production of Documents at Interrogatory Response No 13]; (4) not permitted to delay taking USMLE Step 1 until his third year of studies [DE 25, First Amended Complaint at ¶ 51]; and (5) not provided a fourth attempt to successfully complete Step 1 [DE 25, First Amended Complaint at ¶ 25, 32, 41].

(Doc. No. 34 at 13). In context, it is clear that ground (2) is a reference to accommodations *concerning the conditions for taking* Step 1, rather than a reference to allowing Step 1 to be taken a fourth time (which is specifically delineated as ground (5)).

The Court perceives that Plaintiff does not disagree with this summary presented by Defendant; that is, Plaintiff does not dispute that the Amended Complain suggests these five bases for a failure-to-accommodate claim, although as discussed below Plaintiff does clarify that in fact he is not grounding his failure-to-accommodate claim on grounds (1) and (2) above.

Defendant attempts to refute each of the five asserted grounds for a failure-to-accommodate claim. Defendant states, "First, Plaintiff admits the only testing accommodation that he requested from Meharry for internal examinations was extended time to complete the testing." (Doc. No. 34 at 13) (citing Dawit Dep. at 32:13-23 and Ex. 8 at Plaintiff's Interrogatory Response

---

the second alternative does not require the Plaintiff to show that the job requirement to be eliminated is actually *essential.*

*Veith v. Tyson Fresh Meat, Inc.*, No. 3:19-CV-01065, 2022 WL 1231229, at *5 (M.D. Tenn. Apr. 26, 2022) (footnote omitted).

No. 12). Actually, the first cited source does not support the proposition that extended time to complete internal testing was the *only* requested accommodation for internal examinations, proposition here, and the Court does not see where the second source is part of the current record.[20] But Plaintiff concedes that "Defendant is correct that there is no dispute that Plaintiff received accommodations as requested for internal examinations." (Doc. No. 39 at 10). The implication here is that Plaintiff received *all* accommodations as requested. Thus, the Court accepts, and Plaintiff clearly concedes, that his failure-to-accommodate claim is not properly predicated on ground (1).

That leaves grounds (2) through (5) above. Beginning with ground (2), Defendant states:

Plaintiff admits that he knew Meharry could not provide him with testing accommodations for USMLE Step 1 and that testing accommodations for USMLE Step 1 were approved by the NBME. [Dawit Dep. at 32:24-33:20]. As such, there is no basis in fact for Plaintiff's claim that Meharry denied him testing accommodations for USMLE Step 1 as he was fully aware that Meharry was not empowered to do so.

(Doc. No. 34 at 14). This time, the cited material (particular testimony from Plaintiff's deposition) supports the proposition for which it is cited, and the Court does not see where Plaintiff has disputed the proposition.

In response, Plaintiff argues that "Defendant, quite simply, has a factual problem with its arguments regarding Meharry's lack of ability to assist Plaintiff in accessing accommodations for the Step 1 exam." (Doc. No. 39 at 11). But regarding Defendant's alleged failure to provide an accommodation that *Defendant itself was able to* provide for the Step 1 exam—as contrasted with Defendant's alleged failure to assist Plaintiff in accessing accommodations for the Step 1 exam

---

[20] This sort of thing is very detrimental to a party's efforts to have a court embrace its asserted propositions, because "[j]udges are not like pigs, hunting for truffles that might be buried in the record." *See Dibrell v. City of Knoxville, Tenn.*, 984 F.3d 1156, 1163 (6th Cir. 2021) (alteration in original).

that could be provided *only by NBME*—Plaintiff refers only to a single kind of requested accommodation that (according to Plaintiff) Defendant could provide: a fourth attempt at Step 1. (Doc. No. 39 at 11). But this accommodation is the subject of ground (5) and is not within the scope of ground (2) as delineated by Defendant. So Plaintiff's failure-to-accommodate claim is not properly predicated on ground (2).

Ground (3) *does* relate to Defendant's alleged failure to assist Plaintiff in accessing accommodations for the Step 1 exam that could be provided, if at all, only by NBME. Plaintiff explains the nature of Defendant's alleged failure as follows:

> As Plaintiff attempted to coordinate accommodations with the NBME, he advised Meharry that there was a minimum of two months review time for accommodations approval. In order to comply with Meharry's deadlines for taking the test, Plaintiff had less than two months to prepare which did not provide the NBME with sufficient time to review and approve his requests. Plaintiff believed that, because Meharry had provided an extension of time for his regular coursework, that Meharry would understand he needed additional time for the Step 1 exam as well. Despite the fact that Meharry knew of Plaintiff's need for additional time, it did not provide adequate time for the National Board of Medical Advisors ("NMBE") to review and approve his requests. As a result, Plaintiff was not able to attempt the Step 1 exam with accommodations because the NMBE did not have the opportunity to review his applications.

(Doc. No. 39 at 3-4) (citations omitted). In response, Defendant argues in pertinent part that "[t]he claim that a medical student should be provided as much time as necessary to obtain testing accommodations from NBME was considered and rejected in *Doe v. St. Louis Univ. Sch. of Med.*, [No. 4:12CV905SNLJ, ]2013 WL 1305825[,] at *12 [(E.D. Mo. Mar. 28, 2013)], and this Court should do likewise." (Doc. No. 34 at 15). The Court agrees with the essence of this argument. In the Court's view, Defendant has accurately characterized both of Plaintiff's claims here—that a medical student should be provided as much time as necessary to obtain testing accommodations from NBME. And Defendant has accurately stated the gist (although, arguably, not the letter) of *Doe*'s treatment of that claim. In *Doe*, the plaintiff asserted in pertinent part that the defendant

medical school "should have given plaintiff additional calendar time for an unspecified duration so as to enable the plaintiff to continue pursuing Accommodations from the NBME . . . ." *Doe*, 2013 WL 1305825 at *6. The court noted that as to this assertion, "[plaintiff's] requested accommodations now change the focus from the time allowed for him to take tests administered by [the defendant medical school] to the time, in terms of months or years . . . to take and pass a test [USMLE Step II] administered by a third-party [NMBE]." *Id.* With respect to this aspect of his failure-to-accommodate claim, Plaintiff does likewise, focusing on Defendant's refusal to allow him additional time to obtain from NMBE the accommodations he requested for USMLE Step I. *Doe* was not explicit in rejecting the notion that a medical student should be provided as much time as necessary to obtain testing accommodations from NBME, but such rejection was implicit in its rejection of the plaintiff's failure-to-accommodate claim.

Here, while recognizing that *Doe* is certainly not binding precedent, the Court likewise rejects that notion and, perhaps more to the point, rejects the assertion that a medical school can be liable for failure to accommodate the disability of a student based on the theory that the medical school somehow caused a third-party tester's refusal to accommodate the plaintiff's testing needs. In the Court's view, this kind of failure-to-accommodate theory is too attenuated to hold metaphorical water; it makes one party liable for *another party*'s denial of a particular kind of requested accommodation (here, accommodations in the manner of taking the Step I test), even though the first party's refusal was of something (in this case, extending the deadline for taking the Step I test) other than the requested accommodation directly at issue. And Plaintiff provides no legal support for such a theory. So Plaintiff's failure-to-accommodate claim is not properly predicated on ground (3).

Regarding ground (4), concerning Plaintiff being denied permission to delay his first attempt at Step 1 until his third year of studies, Defendant points to deposition testimony of Plaintiff that strongly suggests that Plaintiff never requested any such delay as an accommodation for his disabilities. (Doc. No. 34 at 15 n.9). The testimony unmistakably indicates that instead of requesting a delay (and doing so in time for Defendant to be able to grant it), Plaintiff instead merely complained about the lack of such delay when appealing his termination from Defendant's program based on failing his third attempt at Step 1—"to use that," as Plaintiff put it, "as a reason why I should get more time to prepare for my third attempt." (Doc. No. 36-1 at 37). Defendant thus has shifted to Plaintiff the burden to show that a jury could find that actually he (timely) requested such an accommodation. In his Response, Plaintiff fails to do so; therein he complains about being required to take the Step I exam (the first time) before his third year, (Doc. No. 39 at 19–20), but he cites no evidence that he requested a delay, let alone requested a delay specifically in order to accommodate his disabilities. In short, ground (4) fails because it is based on a lack of an accommodation that Plaintiff never even requested.

Ground (5) is different, however. As noted above, after his dismissal from Meharry, Plaintiff filed an appeal requesting that he be allowed to sit for Step 1 a fourth time. (Doc. No. 40 at 8, 11). It is clear from the record that Plaintiff requested such an accommodation, and Defendant does not dispute this. Instead, Defendant relies primarily on the assertion that "Meharry's decision to implement a policy whereby students may only sit for USMLE Step 1 three times prior to being dismissed is not a proper subject for evaluation by the Court," (Doc. No. 34 at 16). But this assertion—however meritorious it otherwise might be—is not grounds for summary judgment for Defendant, because (as discussed above) a jury could find that Meharry did not actually implement such a policy. Defendant also argues that Plaintiff's proposed accommodation is unreasonable.

Perhaps a jury could and would agree. But Defendant has not shown that a reasonable jury would *have to* agree. To support such a showing, Defendant only (i) asserts that when Meharry (through Dean Mallett) had permitted a student a fourth attempt on Step 1, "the student's academic performance suggested that the barrier to passing was the student's test taking ability and not their mastery of the information being tested," and (ii) implies that in Plaintiff's case, by contrast, the barrier was a lack of mastery of the information being tested. (Doc. No. 16 at 34). Defendant's implication is that a request for a fourth attempt at Step 1 is unreasonable when (as Defendant maintains was true in Plaintiff's case) it is made by a student who lacks mastery of the information being tested (but reasonable in other cases, including cases in which Meharry granted the request). Defendant is free to argue this (implied) proposition to the jury, but Defendant has not shown that the issue should not even reach the jury because any reasonable jury would have to accept the proposition. Moreover, Defendant has not even shown that the proposition is relevant here, because it has not shown that any reasonable jury would have to find that Plaintiff lacked "mastery"—whatever that means—as of the time he was denied a fourth attempt at Step 1; the Court concludes that a reasonable jury could conclude otherwise, based on the current record, which shows that at the time of denial Plaintiff undisputedly was in good standing as a Meharry student (Doc. No. 45 at 7) and does not affirmatively show a lack of "mastery" as of that particular time.

For these reasons, the Motion will be granted to the extent that it seeks summary judgment on the failure-to-accommodate claim based on anything other than a failure to allow a fourth attempt at the Step 1 exam, but denied to the extent that it seeks summary judgment on the failure-to-accommodate claim based on a failure to allow a fourth attempt at the Step 1 exam. Or, put differently, Defendant will be denied summary judgment on Plaintiff's failure-to-accommodate

claim, but the claim is deemed limited to an alleged failure to accommodate Plaintiff by allowing

a fourth attempt at the Step 1 exam,

### III. Defendant Will Be Denied Summary Judgment as to Plaintiff's Claim for Breach of Contract, although the Court does not intend to permit Plaintiff to pursue damages for loss of educational opportunity, loss of career advancement, and the like.

Under Tennessee law, "'[t]he essential elements of any breach of contract claim include

(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the

contract, and (3) damages caused by the breach of the contract.'" *Joiner v. Meharry Med. Coll.*,

No. 3:18-CV-00863, 2020 WL 7027505, at *5 (M.D. Tenn. Nov. 28, 2020) (quoting *ARC LifeMed,

Inc. v. AMC-Tennessee, Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005) (quoting *Custom Built

Homes v. G.S. Hinsen Co.*, No. 01A01-9511-CV-00513, 1998 WL 960287, at *3 (Tenn. Ct. App.

Feb. 6, 1998))); *see also Thomas v. Meharry Med. Coll.*, 1 F.Supp.3d 816, 828 (M.D. Tenn. 2014).

"A contract can be either express or implied." *Joiner*, 2020 WL 7027505, at *5 (citing *Jamestowne

on Signal, Inc. v. First Fed. Sav. & Loan Ass'n*, 807 S.W.2d 559, 564 (Tenn. Ct. App. 1990)). In

a case involving Defendant itself, the undersigned provided the following discussion regarding the

existence of a contract between a student and an academic institution:

> When applying Tennessee law, the Sixth Circuit has stated that "the student-university relationship is contractual in nature although courts have rejected a rigid application of contract law in this area." *Sifuna v. S. Coll. of Tennessee, Inc.*, No. 17-5660, 2018 WL 3005814, at *2 (6th Cir. Apr. 5, 2018) (quoting *Doherty v. S. Coll. of Optometry*, 862 F.2d 570, 577 (6th Cir. 1988)). The Tennessee Supreme Court has not identified a standard to apply when a dispute arises out of a university/student relationship, but the Sixth Circuit has stated that it believes that the Tennessee Supreme Court would apply a deferential standard of "reasonable expectation—what meaning the party making the manifestation, the university, should reasonably expect the other party to give it." *Doherty*, 862 F.2d at 577 (quoting *Lyons v. Salve Regina Coll.*, 565 F.2d 200, 202 (1st Cir. 1977)); *Anderson*, 450 F. App'x at 502 (noting the likely applicability of this standard to an implied contract).

> Courts have regularly found implied contracts, between a school and student, from a school publication, even when that publication contains disclaimer

language. *E.g.*, *Atria*, 142 F. App'x at 255 (finding that language in the handbook that the policies "are not intended to be all-inclusive and do not constitute a contract" prevented an express contract, but allowed for an implied contract); *Doe v. Vanderbilt Univ.*, No. 3:18-CV-00569, 2019 WL 4748310, at *12 (M.D. Tenn. Sept. 30, 2019) (citing *Atria*); *Doe v. Belmont Univ.*, 334 F. Supp. 3d 877, 890 (M.D. Tenn. 2018) ("Because the Bruin Guide attempts to disclaim its entire contractual force, the Court will not consider the disclaimer, and utilizes the Bruin Guide as defining the terms of the implied contractual relationship between Doe and Belmont."). "Catalogs, manuals, student handbooks, bulletins, circulars and regulations of a university help define the implied contractual relationship." *Doe v. Vanderbilt Univ.*, 2019 WL 4748310, at *12 (citing *Atria*).

Despite the clear agreement of most courts, Defendant encourages this Court to adopt a different approach and find no implied contract between Plaintiff and Defendant due to limiting language in the [Meharry] manual. In support of its suggestion, Defendant cites two cases. (Doc. No. 35 at 20). In the first case, the Sixth Circuit indicated that it was difficult to find a binding contract that would not allow a school to change its graduation requirements when a catalog contained disclaimer language. *Doherty*, 862 F.2d at 577. In the second case, a Tennessee court noted in dictum that the language in a Meharry guidebook does "not contain binding representations or agreements by Meharry," because of a disclaimer included therein. *Lord v. Meharry Med. Coll. Sch. of Dentistry*, No. M200400264COAR3CV, 2005 WL 1950119, at *4 (Tenn. Ct. App. Aug. 12, 2005) (noting that plaintiff had not brought implied contract claim but the court would decline to find an implied contract). The Court is unpersuaded that it should adopt the approach of these two cases, each of which involved only dicta on the relevant issue, when the clear majority of cases (including from the Sixth Circuit) have found that an implied contract is present between a university and student.

Therefore, the Court finds that there was no express contract between the parties. However, the Court finds that there was an implied contract. This implied contract is defined by the terms of [Meharry's] manual. *Doe v. Vanderbilt Univ.*, 2019 WL 4748310, at *12; *Z.J. v. Vanderbilt Univ.*, 355 F. Supp. 3d at 689.

.

*Joiner*, 2020 WL 7027505, at *6–8 (footnotes omitted). The Court will adhere to the above discussion.

Defendant argues that Plaintiff's breach-of-contract claim fails as a matter of law because (according to Defendant): (i) the Meharry's manual's disclaimer of a contract between Defendant and students prevented the existence of a contract between Plaintiff and Defendants; (ii) even if such a contract was not prevented by the existence of the disclaimer, no enforceable contract was

formed; (iii) even if Defendant has *some* enforceable contractual obligations towards Plaintiff, Defendant did not breach any such obligation; and (iv) Plaintiff's damages are too speculative to permit recovery.

For the reasons set forth in *Joiner*, the Court rejects Defendant's first argument. The Court finds that the Meharry manual's disclaimer of a contract between Defendant and its students does not preclude the existence of an *implied* (as opposed to express) contract between Plaintiff and Defendant;[21] certainly Defendant has supplied no law (or evidence, for that matter) that could change the Court's view on this.

As for Defendant's arguments (ii) and (iii) above, one sees that Defendant actually is arguing not that there is no genuine issue of material fact as to the breach-of-contract claim and that Defendant is entitled to judgment as a matter of law (the Rule 56 standard), but rather that the Complaint fails to state a claim for breach of contract because (according to Defendant) it does not adequately allege the existence of an enforceable contract or the breach of any identifiable particular term thereof (the Rule 12(b)(6) standard). But Defendant has provided no support for the proposition that summary judgment can be granted due to the failure to state a claim in a complaint, and the Court is hesitant to say that it can. After all, it is one thing to assess whether the allegations in a complaint are adequate to state a claim, and it is another thing to assess (based on materials of record and not just the allegations of the complaint) whether there are genuine issues of material fact and whether the defendant is entitled to judgment as a matter of law on a

---

[21] The Court pauses to note that there are two kinds of implied contracts: contracts implied in fact, and contracts implied in law. *Stahl v. United States*, 141 Fed. Cl. 396, 404 (2018). The latter kind is said to exist when the claimant has a valid promissory estoppel theory. *See id.* ("Promissory estoppel is another name for an implied-in-law contract claim."). In this case, Plaintiff alleges both kinds, (Doc. No. 25 at 7, 11); as discussed below, he asserts a promissory estoppel theory in connection with Count III. But here, in connection with Count II, the Court is addressing his claim of a contract implied in fact.

claim that was not previously dismissed for failure to state a claim. Indeed, a defendant may fervently believe that a claim is inadequately stated in a complaint, but if the claim is not dismissed for that reason, the claim survives and may be supported by *evidence* sufficient to reach a jury; at that juncture, it is the defendant's job to convince the Court that that is not the case. Here, Defendant did not even attempt to undertake that task;[22] instead, with respect to all of these arguments, Defendant largely merely rehashed its arguments (which the Court rejected) made in its memorandum (Doc. No. 6) its motion (Doc. No. 5) to dismiss the complaint pursuant to Rule 12(b)(6). But Plaintiff's breach-of-contract claim survived that motion pursuant to an order of the Court, (Doc. No. 20 at 8-15), and so Defendant needed not to seek a second bite at the 12(b)(6) apple but instead to explain why materials of record showed that there was no genuine issue of material fact and that Defendant is entitled to judgment as a matter of law.

With respect to its argument (iv) above, Defendant again largely rehashes the argument it made on its Rule 12(b)(6) motion. Specifically, Defendant argues on the instant Motion, (Doc. No. 34 at 20), as it did before, (Doc. No. 6 at 7), that damages for loss of educational opportunity, loss of future career prospects, and the like are too speculative to be awarded. The Court agrees and has said so before. (Doc. No. 20 at 13-14). But it will repeat something else it said before:

> Plaintiff does not appear to base his damages upon improper considerations discussed above, such as lost future earnings, career advancement, or advanced educational opportunities. Plaintiff instead argues in his response that his damages stem from not having appropriate accommodations and costs he incurred in receiving his education.

(Doc. No. 20 at 14). In his response, Plaintiff essentially confirms that he is not seeking damages of the kind that defendant claims are too speculative, (Doc. No. 39 at 15), and (as Defendant surely will be glad to know) the Court does not intend to permit Plaintiff to pursue them. But Plaintiff

---

[22] The Court declines to venture an opinion as to whether any such attempt, had it been made, would or should have proven successful.

seeks damages that have not been shown to be too speculative, and thus the breach-of-contract claim does not fail due to failure to allege any non-speculative damages.

## IV. <u>Defendant Will Be Denied Summary Judgment as to Plaintiff's Quasi-Contract Claim</u>.

In Count III, Plaintiff brings a claim based on "quasi-contract or contract implied [in] law." (Doc. No. 25 at 11). As noted in a footnote above, a contract implied in *law* is distinguishable from a contract implied in *fact*; the possibility that Plaintiff had a contract implied in fact has (appropriately) been addressed and credited (for now, at least) above in connection with Count II's claim for breach of contract. Count III encompasses theory of contract implied in law;[23] the theory is not so much that there was a contract and that the defendant "breached" it; the theory is actually more to the effect that even if the dealings between the plaintiff and the defendant did not actually involve anything amounting to a contract as such, the dealings were such that the plaintiff should have a remedy based on what the plaintiff lost (or, alternatively in some cases, on what the defendant gained) from the dealings. The theory goes by different names. The names Plaintiff invokes are "quasi contract" and "contract implied in law."[24]

Defendant makes only one argument as to this claim. Specifically, it notes (correctly) that Tennessee law does not recognize a cause of action for educational malpractice, then asserts that "[w]hile couched in the context of a claim for breach of quasi contract or contract implied by law, this [claim] is really an attempt by Plaintiff to pursue a non-cognizable claim for educational

---

[23] The Court declines for now to assess whether a plaintiff can recover under both a contract-implied-in-fact theory and a contract-implied-in-law theory. At present, the question instead is whether Plaintiff can continue to *proceed* under both theories.

[24] Based on his allegations in paragraph 57 of the complaint, Plaintiff seemingly could have added the term "promissory estoppel," which is a different theory, albeit one that is likewise based on dealings between the plaintiff and the defendant. But Plaintiff did not expressly invoke the theory of promissory estoppel, and the Court actually finds that theory well might be inapplicable here for reasons it need not delve into. So the Court declines to consider Count III as embracing a claim of promissory estoppel.

malpractice." (Doc. No. 34 at 21). But Defendant provides no support for this assertion; it does not explain why it is accurate to characterize this claim as an attempt by Plaintiff to pursue a claim for educational malpractice in the guise of an implied-in-law claim. And the Court does not independently see why this is a fair characterization. Notably, Plaintiff's claim is not like the claim in *Joiner*, which the Court (with the undersigned presiding) did find to be essentially one for educational malpractice. There, the Court characterized the plaintiff as alleging, among other things, a "breach of obligation to provide education and instruction," based on the plaintiff's allegations that the defendant's school (Meharry) "gave him certain bad grades, allowed cadavers to thaw in violation of health codes, did not require him to repeat classes he failed, dismissed him for failing a class, allowed other students to retake classes, re-enrolled students who cheated, did not prepare teachers to teach their courses, enrolled more students than MMC was accredited to teach, and used unaccredited curriculum and unrelated test questions." *Joiner*, 2020 WL 7027505, at *11. Plaintiff here, by contrast, makes no allegations remotely like that.

Defendant is to be commended for the conciseness of its argument here (as well as similar conciseness elsewhere), inasmuch as it has chosen to set forth with impressive brevity only what it considered its best argument on this claim without spilling ink for the sake of spilling ink. But for the reasons just stated, Defendant's argument here misfires. Accordingly, Defendant will be denied summary judgment on Count III.

## V. **Defendant Will Be Granted Summary Judgment as to Plaintiff's Claim for Negligent Misrepresentation.**

In Tennessee, a claim for negligent misrepresentation requires the plaintiff to show that: (1) the defendant supplied false information to the plaintiff; (2) the defendant did not exercise reasonable care in obtaining or communicating this information; and (3) the plaintiff justifiably relied on the information. See *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 751–52 (6th Cir.

2014).[25] In addition, "the misrepresentation must consist of a statement of a material past or present fact." *E. Hallows L.L.C. v. Live Nation Ent., Inc.,* No. 3:19-cv-00465, 2022 WL 3270603, at *8 (M.D. Tenn. Aug. 10, 2022). "Consequently, 'statements of opinion or intention are not actionable,' and 'representations concerning future events are not actionable even though they may later prove to be false.'" *W. Silver Recycling, Inc. v. ProTrade Steel Co., LTD.*, 476 F. Supp. 3d 667, 682 (M.D. Tenn. 2020) (quoting *McElroy v. Boise Cascade Corp.*, 632 S.W.2d 127, 130 (Tenn. Ct. App. 1982)); *see also Fowler v. Happy Goodman Family*, 575 S.W.2d 496, 499 (Tenn. 1978) ("[T]he rule established by the cases in this state has been that a misrepresentation of intention or a promise without intent to perform is legally insufficient to support a claim for rescission or damages."). That is, "[s]tatements of future intention, opinion, or sales talk are generally not actionable[,] because they do not involve representations of material past or present fact." *Power & Tel. Supply Co. v. SunTrust Banks, Inc.*, 447 F.3d 923, 931 (6th Cir. 2006).

Plaintiff states that "[i]n [Defendant's] Memorandum in Support of its Motion for Summary Judgment, Defendant attempts to summarize Plaintiff's allegations into two generalized statements/representations." (Doc. No. 39 at 17). Plaintiff's statement is accurate; given that what Defendant asserts is that "Plaintiff identifies two categories of misrepresentations alleged to have been made by representatives of Meharry – (1) [that Meharry would make] provision of reasonable accommodation [of Plaintiff's disabilities] and (2) [that that there would be] applicability [to

---

[25] Some statements of the elements include a requirement that the defendant be acting in the course of its business or in a business or pecuniary transaction. *See, e.g., Robinson v. Omer*, 952 S.W.2d 423, 427 (Tenn. 1997) (stating that to prove a negligent misrepresentation claim, the plaintiff must show: (1) the defendant was acting in the course of his business, profession, or employment, or in a transaction in which the defendant has a pecuniary interest; (2) the defendant supplied faulty information meant to guide others in their business transactions; (3) the defendant failed to exercise reasonable care in obtaining or communicating the information; and (4) the plaintiff justifiably relied upon the information). This requirement apparently would not be difficult to satisfy in the present case in any event, but for present purposes the Court will (to Plaintiff's benefit) disregard *arguendo* any such requirement.

Plaintiff] of the new curriculum adopted for the class of students entering [Meharry] in 2018 (which Plaintiff has continually [ ]characterized as a change in 'policy')" (Doc. No. 34 at 22). But Plaintiff's statement here is off-base here to the extent that it implies that Defendant's "attempt" is disingenuous or otherwise without merit. A review of the allegations in paragraphs 47-65 of the First Amended Complaint (Doc. No. 25), which Plaintiff notes are the place to look to identify the nature of the alleged negligent misrepresentations, (Doc. No. 39 at 19-21), shows that Defendant's characterization is quite fair. The Court identifies only two places where Plaintiff actually alleges a particular (allegedly false) representation: (i) in paragraph 50, where Plaintiff alleges that "Meharry Medical College officials . . . advised Plaintiff that he could take advantage of policy changes made after he began his studies at Meharry if such changes benefitted him"; and (ii) in paragraph 52, where Plaintiff alleges that "Meharry, through Dean McClure, represented to Plaintiff that it would provide him with the requested accommodations so he could take the exam and made a commitment to do so." (Doc. No. 25 at 8). Defendant's paraphrasing of these allegations is fair (as is the Court's clarification, via the bracketed text, of Defendant's paraphrasing).

The Court additionally can and will further paraphrase Plaintiff's allegations in a manner the Court perceives as undeniably accurate. In substance, Plaintiff alleges that (i) Defendant represented that it *intended* to provide reasonable accommodation of Plaintiff's disabilities *at such future time* as might prove necessary; and (ii) Defendant represented that it would in the future make applicable to Plaintiff the policy changes adopted for the students entering Meharry in 2018 (in particular the policy change allowing those students "to take the STEP 1 near the end or after their third year of Medical School, not earlier as it required Plaintiff." (Doc. No. 25 at 5).

Each of these statements is merely a statement of *intention or representations of future events*, not present or past facts. Accordingly, neither of these purported statements supports a claim for negligent misrepresentation. *See Almanza v. Baird Tree Serv. Co.*, No. 3:10-CV-311, 2012 WL 4758276, at \*9 (E.D. Tenn. Oct. 5, 2012) (granting summary judgment on the negligent misrepresentation claim brought pursuant to Tennessee law because the defendant's statement that he "would ensure compliance" involved future action and intention); *Orea Energy Grp., LLC v. E. Tenn. Consultants, Inc.*, No. 3:09-CV-041, 2009 WL 3246853, at \*3 (E.D. Tenn. Oct. 6, 2009) (holding that the defendant's "representations and assurances" that it would provide under the contract would not support claim of negligent misrepresentation under Tennessee law because it was a statement of future intent); *Hood Land Tr. v. Hastings*, No. M200902625COAR3CV, 2010 WL 3928647, at \*8 (Tenn. Ct. App. Oct. 5, 2010) ("[The defendant's] alleged statements concerning his intention to buy the Hood property cannot, as a matter of law, make out a claim for negligent misrepresentation. There is no statement of material fact alleged.").

Seeking to avoid summary judgment on this basis, Plaintiff makes two arguments. The first is:

> Defendant fails to acknowledge that there is an exception to the general rule that misrepresentations regarding future events cannot be based on future promises. "Where a relation of trust and confidence exists between two parties, so that one of them places peculiar reliance in the other's trustworthiness, the latter is liable for representations as to future conduct, and not merely as to past facts." *Young v. Cooper*, 30 Tenn. App. 55, 71, 203 S.W.2d 376, 383 (1947). In this case, Plaintiff submits that such a relationship exists.

(Doc. No. 39 at 18). But Plaintiff provides no factual or legal support for the proposition that such a relationship existed between him and Defendant. The Court has not found any Tennessee authority on point, and it holds this against Plaintiff because the Court perceives that it would be the plaintiff's burden to establish the potential applicability of an exception the plaintiff invokes

in an effort to avoid summary judgment. Indeed, one district court in this circuit has treated the absence of authority to support the existence of such a special (or fiduciary) relationship between a student and a college as essentially indicating that no such special relationship exists—*i.e., that the relationship between a student and a college is not special*—and that therefore the exception is inapplicable to save an otherwise flawed negligent misrepresentation claim:

> Plaintiff has not alleged that any such "special relationship" exists between a college or university and its students or their parents. Ohio courts have refused to recognize a fiduciary relationship between a university and its students. *See Valente v. Univ. of Dayton*, 438 F. App'x 381, 387 (6th Cir. 2011) (finding no Ohio cases recognizing such a fiduciary relationship); *Ohio Univ. Bd. of Tr. v. Smith*, 132 Ohio App.3d 211, 219-20, 724 N.E.2d 1155, 1160 (Ohio Ct. App. 1999) (noting lack of authority to support a finding that "there is a special or fiduciary relationship between an educational institution and a prospective student."). Accordingly, the Court finds, as a matter of law, that Plaintiff's negligent misrepresentation claim against Wilberforce [University] is simply not viable.

*Austin-Hall v. Woodard*, No. 3:18-CV-270, 2020 WL 5943018, at *9 (S.D. Ohio Oct. 7, 2020). The Court here likewise finds the exception inapplicable.

Second, Plaintiff argues that "aside from a general summary of Plaintiff's allegations, Defendant fails to state that there is no genuine issue of material facts. As a result, what remains are literally Plaintiff's allegations which, practically speaking, are statements of disputed facts." (Doc. No. 39 at 21). The Court certainly recognizes that Defendant, as the summary-judgement movant, must make an initial showing that there is no genuine issue of material fact regarding Plaintiff's negligent misrepresentation claim. For the reasons set forth above, the Court concludes that Defendant has done so, and that Plaintiff—having thus received the countervailing burden to show such an issue—has failed to meet that burden. *This* is what is consequential, and not whether Defendant in this particular context used the magic words, "no genuine issue of material fact." Plaintiff has a point in that it generally behooves a summary-judgment movant to speak, claim-by-claim, expressly in terms of the absence of a genuine issue of material fact. But here, Defendant

has made clear elsewhere that it is aware that it must show such an absence (even though Defendant herein has been mostly unsuccessful in going about making that showing), and the clear gist of Defendant's argument is that there is an absence of a genuine issue of material fact here because the only alleged negligent misrepresentations are indisputably "prospective in nature" rather than related to a "material past or existing fact." Thus, Defendant's argument does not fail on the alleged grounds that Defendant failed to adequately assert and show the absence of a genuine issue of material fact.

## CONCLUSION

For the reasons discussed herein, Defendant's Motion will be **GRANTED in part** and **DENIED in part**. Specifically, Defendant's Motion will be granted as to Plaintiff's claim for negligent misrepresentation and also as to Plaintiff's failure-to-accommodate claim to the extent that that claim is based on anything other than a failure to allow a fourth attempt at the Step 1 exam, and Defendant's Motion will be denied in all other respects.

An appropriate corresponding order will be entered.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE