| | | |
|---|---|---|
| TEKLU DAWIT, | ) | |
| | ) | |
|    Plaintiff, | ) | |
| | ) | NO. 3:20-cv-00624 |
| v. | ) | |
| | ) | JUDGE RICHARDSON |
| MEHARRY MEDICAL COLLEGE, | ) | |
| | ) | |
|    Defendant. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Defendant's Rule 54(b) motion for reconsideration (Doc. No. 67, "Motion for Reconsideration") of the Court's Order (Doc. No. 51, "Summary Judgment Order") granting in part and denying in part Defendant's Motion for Summary Judgment (Doc. No. 33, "Motion for Summary Judgment"). For the reasons stated herein, the Motion for Reconsideration is denied.

## <u>BACKGROUND</u>

A.  <u>Factual Background</u>

In its summary judgment memorandum opinion (Doc. No. 50, "Summary Judgment Memorandum Opinion"), the Court provided a statement of the factual background. Finding that statement to be useful to placing in context the Motion for Reconsideration, the Court quotes it (including the footnotes appended to that statement, which are footnotes 1-7 herein) immediately below:

### **FACTS**[1]

---

[1] Facts that are stated herein without qualification are undisputed and treated as such. As to cited undisputed facts, the lack of dispute is usually indicated in Doc. Nos. 40 and 45, Plaintiff's and Defendant's respective

### I. Plaintiff's First Year of Medical School

Plaintiff, Teklu Dawit, entered medical school at Meharry Medical College ("Meharry")[2] in the fall of 2015. (Doc. No. 40 at 1).[3] Plaintiff struggled academically in his first-year courses and was subsequently decelerated from a four-year graduation track to a five-year graduation track after his first semester. (Doc. No. 40 at 2).

Since high school, Plaintiff has suffered from Obsessive Compulsive Disorder (OCD), Irritable Bowel Syndrome (IBS), and General Anxiety Disorder (GAD). (Doc. No. 40 at 1). He received formal diagnoses for these disabilities in 2018.[4] (Doc. No. 36-1 at 18-19).[5] For purposes of the instant Motion, it is undisputed that Plaintiff in fact has suffered from OCD, GAD, and IBS a disability. (Doc. No. 34 at 9). Based on his OCD and GAD diagnoses, Plaintiff requested and was granted testing accommodations for internal Meharry exams (i.e., exams given by Meharry as opposed to exams given by to some outside credentialing organization, such as the below-referenced USMLE) in June 2018 (Doc. No. 40 at 6).

---

response to the other party's asserted undisputed material facts. Alleged facts that are qualified here in some way (as for example by being prefaced with "Plaintiff contends that") are in dispute and are treated as such.

As for facts that are undisputed (and thus stated herein without qualification), unless otherwise noted they are taken from Plaintiff's Response to Defendant's Statement of Undisputed Material Facts (Doc. No. 40), from Defendant's Responses to Plaintiff's Statement of Undisputed Material Facts in Opposition to Defendant's Motion for Summary Judgment (Doc. No. 45), or from other documents in the record that reflect that they are undisputed.

[2] The sole Defendant in this case is Meharry Medical College. Herein, "Defendant" is used to refer to Meharry Medical College in its capacity as the sole defendant in this case, while "Meharry" is used to refer, in references to underlying facts, to Meharry Medical College as a place or as an education institution (medical school).

[3] When citing to a page in a document filed by one of the parties, the Court endeavors to cite to the page number ("Page __ of __") added by the Clerk's Office as part of the pagination process associated with Electronic Case Filing if such page number differs from the page number originally provided by the author/filer of the document.

[4] For purposes of the ADA, "disability" is a "physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(a). At least for purposes of the instant Motion, Defendant does not dispute that each of these three conditions constitutes a disability within the meaning of the ADA.

[5] Doc. No. 36-1 is the transcript of the deposition of Plaintiff. Each page of Doc. No. 36-1 contains four pages of the transcript. For the sake of consistency of citation, the Court's citations herein to Plaintiff's deposition testimony are to the page number of Doc. No. 36-1, not to the particular page of the transcript.

## II. Plaintiff's Attempts at Passing the Step 1 Exam

In order to obtain a medical license in the United States, medical students are required to pass the United States Medical Licensing Examination (USMLE),[6] a series of three exams testing students' medical knowledge. (Doc. No. 40 at 3). Meharry required all medical students admitted in 2015 to pass the first USMLE exam (Step 1) by June 30th of their second year of school. (Doc. No. 40 at 3). Meharry's stated school policy allows[7] students to attempt Step 1 three times and mandates dismissal if a student fails all three attempts. (Doc. No. 40 at 4). However, Meharry has permitted other students to take the STEP 1 test more than three times. (Doc. No. 45 at 3). The USMLE Board allows students to take Step 1 up to six times. (Doc. No. 45 at 3).

All accommodation requests for the USMLE exam must be approved by the National Board of Medical Examiners (NBME). (Doc. No. 40 at 3, 8). Medical schools are required to approve their student's test date and provide documentation of the student's prior accommodations before the NBME can begin to process the student's accommodation request. (Doc. No. 36-1 at 9). The NBME requires at least 60 days prior to the exam date to process an accommodation request, and the process can take even longer if there is a large volume of student requests. (Doc. No. 40 at 3, 8).

Prior to his first attempt, Plaintiff felt concerned about his ability to pass Step 1 because his medical issues had interfered with his ability to adequately study for the exam. (Doc. No. 36-1 at 40). In August of 2018, Plaintiff requested that he be allowed to postpone his first attempt at Step 1 from September 2018 to December 2018 in order to give him sufficient study time. (Doc. No. 36-1 at 9). Meharry refused Plaintiff's request and required that he take his first attempt in September 2018 in compliance with the school's testing timetable. (Doc. No. 36-1 at 9). Plaintiff did not request accommodations from the NBME for his first attempt at Step 1 on September 23, 2018, and he took the test without accommodations on that date. (Doc. No. 40 at 7). He was informed that he got a failing score at the end of October. (Doc. No. 40 at 7; Doc. No. 36-1 at 10, 41).

Shortly after Plaintiff received his score, Dean McClure told him that he was still required to complete his second attempt at Step 1 by the end of December 2018. (Doc. No. 36-1 at 10, 41). On December 3, 2018, Plaintiff requested

---

[6] According to its website, "[t]he USMLE®, or the United States Medical Licensing Examination® program, is owned by two entities: the Federation of State Medical Boards (FSMB) and the National Board of Medical Examiners." *See About the USMLE*, USMLE https://www.usmle.org/about-usmle (last visited Feb. 23, 2024).

[7] Occasionally herein, the Court makes statements using the present tense, with the understanding that the statement is equally applicable to all times here at issue.

accommodations from the NBME for his second attempt at Step 1 on December 31, 2018. (Doc. No. 40 at 7). The same day, Plaintiff was informed by the NBME that his request likely would not be processed in time for the test, and he subsequently withdrew his request. (Doc. No. 40 at 8). Plaintiff took his second attempt at Step 1 on December 31, 2018 without accommodations and was informed in January that he received a failing score. (Doc. No. 40 at 8; Doc. No. 36-1 at 11, 41).

Following the receipt of his failing score, Meharry informed Plaintiff that he would be required to sit for his third attempt in March 2019. (Doc. No. 40 at 9). Plaintiff appealed that decision to Dean Mallett. (Doc. No. 40 at 9; Doc. No. 36-1 at 11, 41). Dean Mallett accepted Plaintiff's postponement request in March, allowing him to take his third attempt in June. (Doc. No. 40 at 9; Doc. No. 36-1 at 11, 41).

On April 15, 2019, Plaintiff submitted a request for accommodations to the NBME for his upcoming third attempt at Step 1 on June 23, 2019. (Doc. No. 40 at 10). On May 2, 2019, the NBME informed Plaintiff that it required more recent medical documentation to process his request in time. (Doc. No. 40 at 10). At that juncture, Plaintiff was unable to schedule an appointment with his doctors to obtain the updated documentation before his June test date (Doc. No. 36-1 at 28, 30). Plaintiff subsequently withdrew his request for testing accommodations and took his third attempt at Step 1 on June 23, 2019 without accommodations (Doc. No. 40 at 11). Plaintiff later learned that he failed his third attempt, and then by letter dated August 2, 2019 was notified that he had been dismissed from Meharry. (Doc. No. 40 at 11).

### III. Plaintiff's Appeal

After the dismissal, Plaintiff filed an appeal with Meharry requesting that he be allowed to sit for Step 1 a fourth time. (Doc. No. 40 at 11). During his appeal process, Plaintiff met with Dr. Dexter Samuels, a school administrator. (Doc. No. 36-1 at 14, 36-37). In support of his appeal to Dean Mallett, Plaintiff identified two medical students in the graduating class of 2019 who were permitted a fourth attempt on Step 1. (Doc. No. 40 at 12). Dr. Samuels told Plaintiff that "the fact that Meharry has done that in the past sets a precedent that they're willing to do that with other students" (referring to other students being allowed to attempt Step 1 a fourth time) and that "if there's any changes that were made in the policy, [then] you can argue that those could be applied to you because that's Meharry changing their precedent and that could be applied to a Meharry student that's currently attending the school" (referring to a new policy allowing the class of 2018 onward to take Step 1 after completion of their third year). (Doc. No. 45 at 6). In October 2019, the appeal was denied (Doc. No. 45 at 6). At that time, aside from the Step 1 testing issue, Plaintiff was in good standing as a Meharry student. (Doc. No. 45 at 7).

(Doc. No. 50 at 2-6).

B. <u>Procedural Background</u>

Plaintiff filed the present action, requesting damages for Defendant's alleged violations of the Americans with Disabilities Act as amended ("ADA"), breach of contract, and negligent misrepresentation. (Doc. No. 1-1 at 1). Plaintiff brought two claims under the ADA: one for discriminatory dismissal and one for a failure to accommodate. Plaintiff also brought one breach-of-contract claim and one negligent-misrepresentation claim.

Defendant filed a motion for summary judgment (Doc. No. 33, "Motion for Summary Judgment") and an accompanying memorandum (Doc. No. 34, "MSJ Memorandum") seeking summary judgment on each of Plaintiff's claims. Thereafter, Plaintiff filed a response (Doc. No. 39) and Defendant filed a reply (Doc. No. 46). The Court issued the Summary Judgment Order (Doc. No. 51) and Summary Judgment Memorandum Opinion (Doc. No. 50) granting in part and denying in part Defendant's Motion for Summary Judgment. More specifically, the Court granted Defendant's Motion for Summary Judgment "as to Plaintiff's claim for negligent misrepresentation and also as to Plaintiff's failure-to-accommodate claim to the extent that that claim is based on anything other than a failure to allow a fourth attempt at the Step 1 exam," but the Court denied Defendant's Motion for Summary Judgment "in all other respects." (Doc. No. 51 at 1).

<u>LEGAL STANDARD</u>

Defendant has filed this Motion for Reconsideration pursuant to Fed. R. Civ. P. 54(b), which provides that any order that adjudicates fewer than all claims or the rights and liabilities of fewer than all parties "may be revised at any time before the entry of judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Although the Federal Rules

do not explicitly permit motions to reconsider interlocutory orders, Rule 54(b) of the Federal Rules of Civil Procedure gives district courts broad discretion to revise interlocutory orders under certain circumstances. *See Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004). "This authority allows district courts 'to afford such relief from [interlocutory orders] as justice requires.'" *Id.* (quoting *Citibank N.A. v. Fed. Deposit Ins. Corp.*, 857 F. Supp. 976, 981 (D.D.C. 1994)). "Traditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Id.* (citing *Reich v. Hall Holding Co.*, 990 F. Supp. 955, 965 (N.D. Ohio 1998)).

"This standard vests significant discretion in district courts." *Ratcliffe v. Food Lion, LLC*, No. 3:18-CV-01177, 2019 WL 6242302, at *1 (M.D. Tenn. Nov. 20, 2019) (citing *Kerns v. Caterpillar Inc.*, 144 F. Supp. 3d 963, 967 (M.D. Tenn. 2015)). "The Court must determine, within its discretion, 'whether reconsideration is necessary under the relevant circumstances.'" *Doe v. Byrd*, No. 1:18-CV-00084, 2019 WL 13546234, at *5 (M.D. Tenn. Dec. 17, 2019) (Richardson, J.) (quoting *In Defense of Animals v. Nat'l Institutes of Health*, 543 F. Supp. 3d 70, 75 (D. D.C. 2008)). Notably, "[t]he burden is on the moving party to show that reconsideration is appropriate and that harm or injustice would result if reconsideration were denied." *Id.* (citing *Said v. Nat'l R.R. Passenger Corp.*, 390 F. Supp. 3d 46, 50 (D.D.C. 2019), *aff'd*, 815 F. App'x 561 (D.C. Cir. 2020)). Importantly, "[m]otions for reconsideration are not vehicles for either reasserting arguments previously raised and rejected by the court or presenting arguments that should have been raised previously with the court. *Ratcliffe*, 2019 WL 6242302, at *1 (citing *Said*, 390 F. Supp. 3d at 50-51).

<u>DISCUSSION</u>

**I.      Timeliness of Defendant's Motion for Reconsideration**

Although Rule 54(b) does not contain an express timing provision governing how quickly one must file a motion for reconsideration, other courts have persuasively held that "[w]ith interlocutory orders, whether a motion for reconsideration has been timely filed or not rests solely on whether or not the motion was filed unreasonably late." *Standard Quimica De Venezuela v. Cent. Hispano Int'l, Inc.*, 189 F.R.D. 202, 205 (D.P.R. 1999) (collecting cases). *Accord Backoff, LLC v. Samoco Oil Tools, Inc*, No. 4:19-CV-1072, 2024 WL 4246687, at *3 (S.D. Tex. Jan. 12, 2024) ("Rule 59(e)'s legal standards are applied to motions for reconsideration of interlocutory orders, and a court may consider a motion to reconsider an interlocutory order so long as the motion is not filed unreasonably late." (internal citation omitted)); *see also Hollister, Inc. v. Zassi Holdings, Inc.*, No. 3:13-CV-132, 2015 WL 2157482, at *1 (M.D. Fla. May 7, 2015) (denying motion to revise interlocutory order, and stating: "Even if Defendants could plausibly contend that they did not realize the basis for their Motion until after a January 2015 deposition, Defendants still waited nearly two months after that deposition to file the instant Motion. Defendants' lack of diligence is not to be condoned.").

In the present case, the Court finds that Defendant's Motion for Reconsideration is untimely and need not be considered by the Court, because it was filed unreasonably late. The order that Defendant asks the Court to reconsider (i.e., the Summary Judgment Order) was filed on March 1, 2024. It was not until May 1, 2026—two years and two months later—that Defendant filed the Motion for Reconsideration. Not only was the Motion for Reconsideration made years after the Court issued the Summary Judgment Order (i.e., the order that Defendant now asks the Court to reconsider), but it was also filed less than two months before trial is scheduled to begin. Importantly, the Motion for Reconsideration is devoid of any explanation justifying the delayed

filing, and the Court is unable to discern any justifiable explanation from the record. Notably, and as discussed above, "[w]hether to grant a motion for reconsideration under Rule 54(b) is within the discretion of the court." *Jordan v. Blount Cnty.*, No 3:16-cv-122, 2021 U.S. Dist. LEXIS 271763, at *3 (E.D. Tenn. Mar. 4, 2021) (citing *Luna v. Bell*, 887 F.3d 290, 297 (6th Cir. 2018)). It is discretion, the Court finds that the Motion for Reconsideration was filed unreasonably[8] (and for that matter unjustifiably late) and finds it proper to deny the Motion for Reconsideration on that ground alone.

## II. The Two Arguments Made in Defendant's Motion for Reconsideration

Alternatively, even if the Court did not reject the Motion for Reconsideration as a whole on the grounds of untimeliness, the Court would still deny the Motion for Reconsideration because the two particular arguments made therein are, respectively, made too late and without merit. In its Motion for Reconsideration, Defendant makes two arguments: (1) "First, Defendant moves this Court to dismiss Plaintiff's disability discrimination claim because, in light of the dismissal of all but one basis for Plaintiff's failure to accommodate claim, the two claims are now co-extensive;" and (2) "Second, Plaintiff's inability to identify similarly situated comparators is dispositive of his claims for failure to accommodate and claims under Tennessee law for breach of contract or quasi contract/contract implied in law." (Doc. No. 67 at 1). (The Court refers to these respectively as "Argument 1" and "Argument 2"). The Court will address each argument in turn.

### A. Argument 1

The Court finds that Argument 1 is improper because such argument should have been raised previously. *Ratcliffe*, 2019 WL 6242302, at *1 ("[m]otions for reconsideration are not

---

[8] The Court realizes that in many contexts, reasonable persons can disagree about what is or is not "unreasonable." Here, even if a reasonable jurist could find the delay here to be not unreasonable, the Court has no doubt that a reasonable jurist *easily* could find the delay unreasonable.

vehicles for . . . presenting arguments that should have been raised previously with the court." (citing *Said*, 390 F. Supp. 3d at 50-51)).

For context, the Court will provide a brief overview of Plaintiff's two separate ADA claims. As Defendant explained in its MSJ Memorandum, Plaintiff alleged in his "First Amended Complaint . . . that [(1)] in dismissing [Plaintiff,] Meharry discriminated against him based on a disability in violation of the Americans with Disabilities Act," ("Discrimination Claim") and (2) "that Meharry failed to provide him with reasonable accommodation relating to both internal testing administrated by Meharry and national standardized testing that Meharry does not administer" ("Failure to Accommodate Claim"). (Doc. No. 34 at 1-2). Prior to the Court's Summary Judgment Order, Defendant discerned that Plaintiff's Failure to Accommodate Claim was based on Defendant's alleged failure to provide Plaintiff with the following accommodations: (1) testing accommodations for Meharry internal examinations; (2) testing accommodations by Meharry for USMLE Step 1; (3) sufficient time to request and receive approval from NBME for testing accommodations on USMLE Step 1; (4) permission to delay taking USMLE Step 1 until his third year of studies; and (5) a fourth attempt to successfully complete Step 1. (*Id.* at 13). Notably, the Court's Summary Judgment Order clarified and limited Plaintiff's Failure to Accommodate Claim by granting Defendant's Motion for Summary Judgment "as to Plaintiff's failure-to-accommodate claim to the extent that that claim is based on anything other than a failure to allow a fourth attempt at the Step 1 exam." (Doc. No. 51 at 1). Importantly, although the Court's Summary Judgment Order served to limit the (allegedly requested but denied) accommodations on which Plaintiff could pursue his Failure to Accommodate Claim, the Court's Summary Judgment Order did not affect the manner in which Plaintiff could pursue his Discrimination Claim.

Via the Motion for Reconsideration, Defendant requests reconsideration based on its assertion that "Plaintiff's [Discrimination Claim] should be dismissed because it is co-extensive [with Plaintiff's] claim for failure to accommodate based on the denial of his request for a fourth attempt at Step 1" ("Co-Extensive Argument"). (Doc. No. 67 at 9). The Co-Extensive Argument is premised on a particular assertion of law: that "[w]here the alleged adverse action [underlying a claim of disability discrimination] is the denial of an accommodation itself"—as Defendant contends is true here because (in Defendant's view) the adverse action underlying Plaintiff's claim of disability discrimination is the denial to Plaintiff of a fourth attempt at Step 1—"a standalone ADA discrimination claim cannot survive." (*Id.* at 8).

Notably, Defendant could have asserted its Co-Extensive Argument in its Motion for Summary Judgment,[9] but Defendant did not do so. Although Defendant's Co-Extensive Argument

---

[9] The Court finds that if Defendant wanted the Court to consider the Co-Extensive Argument, Defendant could have and should have asserted it in its Motion for Summary Judgment or MSJ Memorandum. Defendant now argues—for the first time—that "the decision not to provide Plaintiff with a fourth attempt at Step 1 is intrinsically intertwined with the failure to accommodate claim such that there is no standalone claim for discrimination arising out of Plaintiff's dismissal from medical school." (Doc. No. 67 at 9). Notably, this argument—*i.e.*, the Co-Extensive Argument, framed in terms of "intrinsic[ ] intertwin[ing]" rather than "co-extensive[ness]"—was available to Defendant at the time it briefed its Motion for Summary Judgment; it was *not* the Court's Summary Judgment Order that created (or somehow authorized for the first time) the basis for that argument. This argument was absolutely available prior to the Court's Summary Judgment Order, and thus is not properly raised for the first time in response to (26 months after the issuance of) that Order

To the extent Defendant attempts to assert that the Court's narrowing of Plaintiff's Failure to Accommodate Claim via the Court's Summary Judgment Order somehow newly created the basis for the Co-Extensive Argument, Defendant misses the mark. Even before the Court issued its Summary Judgment Order, Plaintiff's Failure to Accommodate Claim was based on (among other things) Defendant's decision not to provide Plaintiff with a fourth attempt at Step 1. If Defendant believed that Defendant's decision not to provide Plaintiff with a fourth attempt at Step 1 was intrinsically intertwined with Plaintiff's Failure to Accommodate Claim, then in the Court's view Defendant should have so asserted in its Motion for Summary Judgment as an alternative basis (or at least a conditional alternative basis) for summary judgment. The fact that the Court—in its Summary Judgment Order—clarified that Plaintiff's Failure to Accommodate Claim would proceed with the understanding that that claim is based solely on Defendant's decision not to provide Plaintiff with a fourth attempt at Step 1 (i.e., that the other four assertions did not support the Failure to Accommodate Claim) does not alter this conclusion.

In sum, the Court finds that the Co-Extensive Argument was available to Defendant at the time it briefed its Motion for Summary Judgment, and that if Defendant wanted the Court to consider such argument, Defendant should have asserted such argument in its Motion for Summary Judgment.

may have gotten traction had it been raised in a timely manner, the Court nonetheless denies Defendant's Motion for Reconsideration as it relates to Argument 1 because reconsideration may not be used to raise new arguments that could have been raised earlier. So, as it relates to Argument 1, Defendant's Motion for Reconsideration is denied.

B.  Argument 2

The Court likewise finds that Argument 2 is unavailing. As discussed above, via Argument 2, Defendant asserts that "Plaintiff's inability to identify similarly situated comparators is dispositive of his claims for *failure to accommodate* and claims under Tennessee law for *breach of contract* or *quasi contract/contract implied in law*" (Doc. No. 67 at 1 (emphasis added); *id.* at 7 ("no reasonable jury could find for Plaintiff on his *[F]ailure to [A]ccommodate [C]laim* because he cannot me[e]t his burden to identify similarly situated comparators." (emphasis added))). However, whether Plaintiff failed to identify similarly situated comparators would (if accepted) be relevant to the disposition of Plaintiff's *Discrimination Claim*, not Plaintiff's Failure to Accommodate Claim nor Plaintiff's claims under Tennessee law for breach of contract.[10] Therefore, the Court finds that Argument 2—which was asserted as grounds to dismiss Plaintiff's Failure to Accommodate Claim and breach of contract claims (Doc. No. 67 at 1)—has no bearing on Plaintiff's Failure to Accommodate Claim nor breach of contract claims and is therefore wholly unavailing. Although the assertions made via Argument 2 (i.e., that Plaintiff failed to identify

---

[10] Whether Plaintiff can identify similarly situated comparators goes toward whether Plaintiff sufficiently satisfied his burden of proving that Defendant's proffered nondiscriminatory reason for taking the adverse action is in reality a pretext—which is relevant to a claim for discrimination, not a failure to accommodate claim nor a breach of contract claim. *See Thomas v. Harvey*, No. 206CV02158BBDDKV, 2009 WL 10701234, at *8 (W.D. Tenn. Mar. 12, 2009), *aff'd*, 381 F. App'x 542 (6th Cir. 2010) ("[P]roof of pretext is not necessary for Plaintiff's disability claims for failure to make a reasonable accommodation." (citing *Benaugh v. Ohio Civil Rights Comm'n*, 278 F. App'x. 501, 507-08 (6th Cir. 2008))); *see also Emmell v. Phoenixville Hosp. Co.*, LLC, No. 16-3787, 2018 U.S. Dist. LEXIS 131402, at *14 (E.D. Pa. Aug. 6, 2018) ("[P]retext is not an applicable consideration for a court deciding a motion for summary judgment on a failure to accommodate claim.").

similarly situated comparators) may ultimately prove to be relevant to Plaintiff's Discrimination Claim, because Defendant did not assert Argument 2 as grounds for dismissal of Plaintiff's Discrimination Claim, the Court will not consider Argument 2 for such purpose. So, as it relates to Argument 2, Defendant's Motion for Reconsideration is denied.[11]

CONCLUSION

For the reasons indicated herein, the Court **DENIES** Defendant's Motion for Reconsideration (Doc. No. 67).

IT IS SO ORDERED.

_Eli Richardson_

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[11] The Court need not herein discuss Argument 2 on the merits. But the Court notes that it believes that Argument 2 is without merit because it ignores that (in the undersigned's firm and previously expressed view) to defeat a plaintiff's indirect-evidence *prima facie* case under *McDonnell Douglas* via a motion for summary judgment, *the defendant-movant bears the initial burden* to make a showing that the plaintiff lacks evidence to establishing one or more of the elements of an indirect evidence *prima facie* case. *Glenn v. Goodwill Indus. of Middle Tennessee, Inc.*, No. 3:21-CV-00465, 2025 WL 2690965, at *4 (M.D. Tenn. Sept. 19, 2025) ("To prevail at the first step of *McDonnell-Douglas*, the defendant, as the summary-judgment movant, must meet its initial burden of showing an absence of evidence from which a reasonable jury could find the plaintiff established a *prima facie* case. *If* the defendant does so, then the burden shifts to the plaintiff to show that at trial it could make out a *prima facie* case of discrimination by a preponderance of the evidence." (emphasis added) (citation and internal quotation marks omitted)).